**Paulette B. STORY, Plaintiff,**

v.

**SUNSHINE FOLIAGE WORLD, INC., Defendant.**

No. 8:99–CV–1614–T–17A.

United States District Court, M.D. Florida, Tampa Division.

Oct. 31, 2000.

---

Stanley Edward Marable, Law Office of Stanley E. Marable, Sarasota, FL, for Paulette B. Story, plaintiff.

Mark E. Levitt, Shannon D. Bream, Allen, Norton & Blue, P.A., Tampa, FL, for Sunshine Foliage World, Inc., defendant.

### *ORDER ON MOTION TO STRIKE AFFIDAVIT AND ON MOTION FOR SUMMARY JUDGMENT*

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff, Paulette B. Story's, Motion to Strike Affidavit, (Dkt.17), Defendant, Sunshine Foliage World, Inc.'s, response thereto, (Dkt.22), Defendant's Motion for Summary Judgment, (Dkts.11–12), and Plaintiff's response thereto, (Dkts.18–21).

#### I. *Background*

This case arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). Plaintiff brings this cause of action under the ADA, alleging discrimination based on an alleged disability with regard to her termination from employment at Defendant's business. A recitation of Plaintiff's employment history is relevant in determining whether to grant Defendant's Motion for Summary Judgment. Where there are conflicts in the evidence, they are resolved, for purposes of Defendant's Motion for Summary Judgment, in favor of Plaintiff, as the nonmoving party.

It is imperative to note that Sunshine Foliage World, Ltd., is Defendant's proper name, even though the name of Defendant on the case file is listed as Sunshine Foliage World, Inc. (Dkt.4). Plaintiff was hired by Defendant in January of 1986, and continued to work for Defendant as an office manager until the date of Plaintiff's termination on November 21, 1998. (Dkts.16, 20). Plaintiff claims that Defendant terminated her on the basis of her alleged disability, and, therefore, violated the ADA. (Dkt.16). Defendant is a Florida limited partnership, which may be named as an entity under Chapter 620 of the Florida Statutes, that maintains a place of business in Wachula, Florida. (Dkt.16). Defendant employs more than fifteen (15) employees, and is a covered entity under the ADA. (Dkt.16).

Plaintiff contends that Plaintiff fully, adequately, and completely performed all of her job duties while she was employed by Defendant. (Dkt.16). Plaintiff claims that, at all times material hereto, she suffered from Alpha–1, Antitrypsin deficiency, a congenital condition which causes severe respiratory problems. (Dkts.16, 20). Plaintiff also claims that she is an individual with a "disability," as that term is defined in § 3(2) of the ADA, 42 U.S.C. § 12101(2). (Dkt.16). Plaintiff states that she informed Defendant of her condition and disability in June of 1997, but continued to perform her job duties, despite being required to take intravenous (IV) antibiotics everyday after work for a period of two (2) weeks. (Dkt.16).

Plaintiff states that Defendant was concerned about her condition and that Bill Lambert, an agent of Defendant, had a meeting with Plaintiff on November 11, 1998, to discuss whether other employees of Defendant could handle Plaintiff's duties if she became ill and unable to work for a period of two (2) weeks or more. (Dkt.16). Plaintiff alleges that, shortly thereafter, she received a letter from Defendant, dated November 21, 1998, stating that she was terminated from her employment with Defendant, because her services were no longer needed. (Dkt.16).

Plaintiff further alleges that her disability was the sole or substantial motivating factor for Defendant's decision to terminate her employment. (Dkt.16). Plaintiff further contends that Defendant acted with malice or reckless indifference to the federally protected rights of Plaintiff, and that Defendant's termination of her employment, due to her alleged disability, constitutes discrimination in violation of the ADA. (Dkt.16). Plaintiff claims that as a direct and proximate result of Defendant's termination of her employment, Plaintiff has suffered lost wages and benefits, lost employment opportunities, substantial damages from pecuniary losses, mental anguish, humiliation, embarrassment, loss of enjoyment of life, and other non-pecuniary losses. (Dkt.16).

## II. *Procedural History*

On December 2, 1998, Plaintiff timely filed a written charge of employment discrimination with the United States Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR). (Dkts.1, 16). In the EEOC complaint, Plaintiff alleges that Defendant terminated her because of her alleged disability. (Dkts.1, 16). On April 22, 1999, the EEOC issued Plaintiff a "Notice of Right to Sue." (Dkts.1, 16). Thereafter, Plaintiff timely filed a Complaint with this Court on July 12, 1999. (Dkt.1). On June 30, 2000, Plaintiff filed an Amended Complaint with this Court

correcting allegations made with respect to the type of business that Defendant operated. (Dkt.16).

## III. *Motion to Strike Affidavit*

### A. *Standard of Review*

■ Federal Rule of Civil Procedure 12(f) provides that upon motion by a party or upon the court's initiative at any time, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Seibel v. Society Lease, Inc.,* 969 F.Supp. 713, 715 (M.D.Fla. 1997); *see also Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 570 (S.D.Fla.1978) (citing *Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir. 1962)). An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not measure up to the standards of Rule 56(e) of the Federal Rules of Civil Procedure. *See Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512 (M.D.Fla.1989).

■ Rule 56(e) of the Federal Rules of Civil Procedure states that an affidavit "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." Because affidavits must be based on personal knowledge, an affidavit based on nothing more than "information and belief" is not sufficient as a matter of law. *See Givhan v. Electronic Engineers, Inc.,* 4 F.Supp.2d 1331, 1334 (M.D.Ala.1998). According to Federal Rule of Civil Procedure 56(e), an affidavit must be stricken when it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge. *See Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.,* No. 91–572–CIV–T–17A, 1993 WL 229601, at *2 (M.D.Fla. June 23,

1993); *see also Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985). The court may only consider evidence that would be admissible in trial. *See id.* Therefore, the court may not consider inadmissible hearsay when deciding a motion for summary judgment. *See Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1256 (M.D.Fla.1996). When an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. *See Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir.1980).

Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." There are two elements which must be present before an out of court utterance may be rendered inadmissible as hearsay: (1) the out of court utterance must be a "statement," i.e., a verbal assertion or conduct intended as an assertion; and (2) the statement must be offered to prove the truth of the matter that it asserts. *See United States v. Cruz*, 805 F.2d 1464, 1477–78 (11th Cir.1986) (citations omitted).

Therefore, "verbal or nonverbal conduct, when it is offered as a basis for inferring something other than the matter asserted," is excluded from the hearsay rule. *Id.* (citations omitted). "Consequently, an utterance may be admitted to show the effect it has on a hearer. Such verbal acts are not in the first instance assertive statements and [are] not offered to prove the truth of the matter asserted." *Id.* (citations omitted); *see also Givhan*, 4 F.Supp.2d at 1335 (stating that even though an affidavit contains statements that recount information and statements allegedly made by other individuals, the information and statements made are admissible when they are offered to prove only that the statements were made, not when they are offered to prove the truth of

the matters asserted therein); *Federal Deposit Insurance Corp. v. Stahl*, 89 F.3d 1510, 1521 (11th Cir.1996) (stating that where a transcript is being offered to show personal knowledge of the alleged problems surrounding an individual's employment, and not to establish the intrinsic truth of those respective problems, the transcript is not considered hearsay); *United States v. Parry*, 649 F.2d 292, 295 (5th Cir.1981) (stating that an out of court statement offered merely to show circumstantial evidence of the declarant's knowledge of the existence of some fact, as opposed to being offered to prove the truth of the matter asserted, is admissible and is not considered hearsay); *United States v. Jennings*, 527 F.2d 862, 869 (5th Cir.1976) (stating that where a statement is offered merely to show that the statement was made, then the statement is not considered hearsay).

### B.  *Analysis*

▉ The Court first turns to the issue of whether Defendant's submission of a corrected affidavit of Beverly Cleland is to be accepted by the Court in support of Defendant's motion for summary judgment. Plaintiff alleges that the initial affidavit of Beverly Cleland, (Dkt.12), that was filed by Defendant is inadmissible because it is an unsworn statement. Motions for summary judgment may be supported by sworn affidavits, however, there is also a statutory exception that allows the substitution of unsworn declarations, provided that they are submitted under penalty of perjury. *See* 28 U.S.C. § 1746 (2000). It is mandated that such unsworn substitute affidavits must explicitly state that they are being submitted under penalty of perjury. *See id.* Defendant concedes the fact that the original unsworn affidavit filed by Defendant did not contain this exact language; however, Defendant filed a corrected affidavit with the Court that included the requisite elements and language that are needed in order to comply with 28 U.S.C. § 1746. (Dkt. 22, "At-

tachment A"). In addition, with respect to the timeliness of Defendant's submission of the corrected affidavit, the date of filing for the corrected affidavit reverts back to the filing date of the original declaration. *See United States of America, et al. v. Gritz Bros. Partnership*, 155 F.R.D. 639 (E.D.Wis.1994) (allowing the filing of a corrected declaration which included the language "under penalty of perjury," and denying the motion to strike unsworn testimony); *see also Travelers Ins. Co. v. Liljeberg Ent.*, 7 F.3d 1203, 1207 (5th Cir. 1993) (allowing the submission of an executed affidavit to correct a previously submitted unexecuted affidavit where opposing party had knowledge of the contents of the affidavit). Therefore, since Defendant's original affidavit was submitted in a timely manner, the Court finds that Defendant's filing of the corrected affidavit is also timely.

The Court turns next to the issue of whether the affidavit of Beverly Cleland, or relevant portions thereof, should be stricken before a determination on Defendant's Motion for Summary Judgment is made. Plaintiff alleges that it is inappropriate for the Court to consider Beverly Cleland's affidavit in support of Defendant's Motion for Summary Judgment, because it "contains nothing more than rank hearsay." (Dkt.17). Plaintiff did not specify with particularity what portions of Beverly Cleland's affidavit allegedly contained hearsay, rather Plaintiff simply asserts that the entire affidavit is inadmissible as hearsay.

■■■■■ The Court will now address with specificity the affidavit of Beverly Cleland and Plaintiff's Motion to Strike. After thoroughly reviewing the affidavit of Beverly Cleland and Plaintiff's Motion to Strike, the Court finds that:

1. Paragraph I of Beverly Cleland's affidavit simply includes personal factual statements regarding her employment, and therefore does not include hearsay.

2. Paragraph II consists of admissions/statements of a party opponent and, as such, these are not defined as hearsay under Federal Rule of Evidence 801(d)(2). Therefore, Paragraph II does not contain hearsay.

3. Paragraph III includes a discussion surrounding the events leading up to Beverly Cleland's employment with Defendant. Paragraph III is based on personal knowledge, and no portion therein contains a "statement," nor does it set forth any oral assertions or nonverbal conduct intended as an assertion. Therefore, pursuant to Federal Rule of Evidence 801(a), Paragraph III does not constitute hearsay because it does not contain a "statement."

4. Paragraph IV includes an outline of the training that Beverly Cleland received at the beginning of her employment with Defendant, and no portion therein constitutes either a statement or nonverbal conduct intended as an assertion. Therefore, pursuant to Federal Rule of Evidence 801(a), Paragraph IV does not contain hearsay because it does not contain a "statement."

5. Paragraph V is based upon Beverly Cleland's personal knowledge of events, and does not contain any specific statements made by any individuals. Therefore, Paragraph V does not contain hearsay.

6. Paragraph VI contains comments regarding Beverly Cleland's personal observations of Plaintiff. The nonverbal conduct in question does not constitute a "statement," nor did Plaintiff intend her nonverbal conduct to be an assertion. Assuming, *arguendo*, that Plaintiff did intend her nonverbal conduct as an assertion, thereby constituting hearsay, this conduct would fall un-

der the "then existing state of mind" exception to hearsay rule, pursuant to Federal Rule of Evidence 803(3). Therefore, Paragraph VI does not contain hearsay, and even if the Court found that it did, it would be admissible because it falls under a recognized hearsay exception.

7. Paragraph VII goes to Beverly Cleland's personal reasons for seeking alternative employment. Therefore, Paragraph VII does not contain hearsay.

8. Paragraph VIII contains Beverly Cleland's testimony as to an altercation between Plaintiff and another employee. This statement is based upon Beverly Cleland's personal knowledge of the events that took place, and is not considered hearsay because Beverly Cleland was actually present to witness the incident, and Plaintiff's statement to the other employee that she had "processed an order incorrectly" is not being offered to prove the truth of the matter asserted, i.e., whether the employee actually did process the order incorrectly. The issue of how the order was processed is irrelevant, and the Court finds that the statement is being offered to show Plaintiff's state of mind and, thus, it falls under the "then existing state of mind" exception to the hearsay rule under Federal Rule of Evidence 803(3). Additionally, the statement constitutes an admission by party opponent, pursuant to Federal Rule of Evidence 801(2). Therefore, the Court finds that Paragraph VIII does not contain inadmissible hearsay, because the statement falls under recognized hearsay exceptions.

9. Paragraph IX recants what occurred during a meeting between Beverly Cleland, Plaintiff, their supervisor, and another employee. All of the information contained therein, with the exception of the comment regarding Plaintiff acting "in a very angry manner," is based upon personal knowledge, as Beverly Cleland was actually present at the meeting and witnessed what transpired. With respect to Plaintiff's nonverbal conduct, Plaintiff did not intend her nonverbal conduct as an assertion. Even assuming, *arguendo*, that Plaintiff did intend it as such, this conduct would fall under the "then existing state of mind" exception to the hearsay rule, pursuant to Federal Rule of Evidence 803(3). Therefore, Paragraph IX does not contain hearsay, and even if the Court found that the nonverbal conduct was hearsay, it would still be admissible because it falls under a recognized hearsay exception.

10. Paragraph X does not contain hearsay because it merely states facts regarding Beverly Cleland's employment with Defendant after Plaintiff had been suspended.

11. Paragraph XI is entirely based on Beverly Cleland's personal knowledge, and no portion therein contains a "statement," nor is any of the nonverbal conduct in question intended as an assertion. Therefore, Paragraph XI does not contain hearsay.

After reviewing the affidavit of Beverly Cleland in question, and after fully examining the applicable law, the Court finds that Plaintiff's Motion to Strike Affidavit, as it relates to inadmissible hearsay, is not justified. As was stated earlier, when an affidavit submitted in support of, or opposition to, a motion for summary judgment contains inadmissible evidence, the court may strike the inadmissible portions of the affidavit and consider the rest. *See Lee*, 632 F.2d at 529. After tediously reviewing the affidavit in question, the Court finds that no portions therein contain any inad-

missible hearsay which should be excluded from the Court's determination on Defendant's Motion for Summary Judgment. Therefore, Plaintiff's Motion to Strike Affidavit of Beverly Cleland is denied.

## IV. *Motion for Summary Judgment*

### A. *Standard of Review*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *See United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *see also Evans v. Meadow Steel Products, Inc.,* 579 F.Supp. 1391, 1394 (N.D.Ga. 1984). The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens,* 874 F.2d 1534, 1538 (11th Cir. 1989) (citing *Celotex,* 477 U.S. at 324–25, 106 S.Ct. 2548).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue of material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *See Celotex,* 477 U.S. at 323–24, 106 S.Ct. 2548.

The moving party is entitled to summary judgment as a matter of law when the nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *See id.* at 322–23, 106 S.Ct. 2548. Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and designate specific facts in affidavits, or in the depositions, answers to interrogatories, and admissions, if any, that show a genuine issue of material fact. *See id.* at 324, 106 S.Ct. 2548. When a party's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. *See Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981). "Issues of material fact are 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Material facts are those that will affect the outcome of the trial under the governing substantive law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All reasonable doubts and all justifiable inferences are

resolved in favor of the nonmoving party. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993); *see also Specialty Malls of Tampa v. City of Tampa,* 916 F.Supp. 1222, 1227 (M.D.Fla.1996).

### B. *Analysis*

The Court will first consider whether Plaintiff has established a *prima facie* case under Title I of the ADA.

■ The ADA states that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2000). To advance a claim under the ADA, Plaintiff must establish a *prima facie* case showing that: (1) she has a disability; (2) she is a "qualified individual," which is to say, able to perform the essential functions of the employment position she holds or seeks with or without reasonable accommodation; and (3) the Defendant unlawfully discriminated against her because of the disability. *See Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1226 (11th Cir.1999); *see also Gordon v. E.L. Hamm & Assoc., Inc.* 100 F.3d 907, 910 (11th Cir.1996); *Pritchard v. Southern Co. Services,* 92 F.3d 1130, 1132 (11th Cir.1996); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). Defendant argues that no genuine issue of material fact remains with regard to any of these elements of Plaintiff's claim and that Defendant is entitled to summary judgment as a matter of law. (Dkt.11).

### 1. *Disability*

■ Under the ADA, the term disability means: (a) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (b) a record of such an impairment; or (c) being regarded as having such impairment. 42 U.S.C. § 12102(2) (2000). An individual is deemed to be 'disabled' for purposes of the ADA if she satisfies any one of these three enumerated definitions. *See* 29 C.F.R. Part 1630.2(g) (App.) (2000). "A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA." *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725 (5th Cir.1995). The ADA requires that the impairment substantially limit one or more of the individual's major life activities. *See id.* at 726.

Plaintiff argues that she has a disability, or was regarded as being disabled, and qualifies under the definition of disability for purposes of the ADA. (Dkt.16). Plaintiff, however, has failed to provide sufficient evidence in support of these contentions. Plaintiff alleges that, "at all times material hereto," she was inflicted with the congenital condition Alpha–1, Antitrypsin deficiency, which causes severe respiratory problems. (Dkt.16). Plaintiff further states that it is a genetic disease that affects people of European descent, and that it results in deterioration of the lungs or liver, ultimately resulting in lung or liver failure. (Dkt.20). Plaintiff also asserts that she was required to take intravenous (IV) antibiotics everyday after work for a period of two (2) weeks. (Dkt.16). However, even with these allegations, Plaintiff has failed to provide the Court with adequate evidence and medical documentation of her alleged disability.

In light of the lack of this evidence, the Court finds that there is insufficient evidence to show that Plaintiff suffered from a disability that substantially limits one or more of Plaintiff's major life activities, and, therefore, Plaintiff does not satisfy the first definition of "disability."

The Court shall next consider Plaintiff's contention that she qualifies as disabled under the ADA because Defendant regarded her as having a disability. According to the EEOC Interpretive Guidelines, there are three ways that an individual may

satisfy the definition of "being regarded as having a disability:"

(1) The individual may have an impairment, which is not substantially limiting but is perceived by the employer or other covered entity as constituting a substantially limiting impairment;

(2) The individual may have an impairment which is only substantially limiting because of the attitudes of others toward the impairment; or,

■■■ (3) The individual may have no impairment at all but is regarded by the employer or other covered entity as having a substantially limiting impairment. *See* 29 C.F.R. Part 1630.2(*l*) (App.) (2000). Courts have stated that a perceived impairment must be substantially limiting and significant. *See Gordon*, 100 F.3d at 913; *see also Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir.1996). A significant impairment "is one that is viewed by the employer as generally foreclosing the type of employment involved, not just a narrow range of job tasks." *Id.; see also* 29 C.F.R. 1630.2(j)(3)(i) (App.) (2000).

■■■ Plaintiff argues that Defendant regarded her as disabled and "perceived her to be suffering from or affected by a disability." (Dkt.16). In this case, the Court must determine whether Defendant perceived Plaintiff's alleged congenital condition as being "substantially limiting and significant." To do so, the Court will first consider whether Defendant had knowledge of the alleged disability, second it will determine the extent of that knowledge, and, third, it will evaluate whether Defendant perceived the alleged disability as being substantially limiting and significant.

First, the Court will consider if Defendant had knowledge of the alleged disability. Plaintiff claims that, in June of 1997, she informed Defendant "of the condition and disability." (Dkt.16). Plaintiff further contends that the purpose behind the November 11, 1998, meeting she had with Bill Lambert was because "Defendant was concerned about Plaintiff's disability and the fact that she might have to miss work in the future." (Dkt.16). Defendant denies the allegation that Plaintiff informed them of a "disability," but states that Defendant was informed of an "illness" from which Plaintiff allegedly suffered. (Dkt.4). Defendant admits that Bill Lambert had a meeting with Plaintiff, however, Defendant denies all other allegations with respect to that meeting, including the contention that "Defendant was concerned about Plaintiff's disability." (Dkt.4). After examining the facts in the light most favorable to Plaintiff, as the nonmoving party, the Court finds that Defendant had knowledge of an alleged disability from which Plaintiff was suffering. Furthermore, the extent of Defendant's knowledge of Plaintiff's alleged disability is hereby deemed adequate, because Defendant was put on actual notice of the alleged disability when Plaintiff informed Defendant of such in June of 1997. (Dkt.16).

Having determined that Defendant had knowledge of Plaintiff's alleged disability, the Court must now consider whether Defendant perceived Plaintiff's congenital condition as substantially limiting and significant. The Eleventh Circuit has added an additional component to the analysis for determining whether an employer "regarded the person as disabled." The perceived disability must be substantially limiting and "significant." *See Gordon*, 100 F.3d at 913. To be significant, Defendant must have perceived Plaintiff's alleged disability as foreclosing the type of employment involved, not just a narrow range of job tasks. *See id.* Several courts have stated that, "an employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes he is incapable of satisfying the singular demands of a particular job." *Ellison*, 85 F.3d at 192; *see also Gordon*, 100 F.3d at 913; *Forrisi v. Bowen*, 794 F.2d 931, 935 (4th Cir.1986); 29 C.F.R. Part 1630.2(j)(3)(i) (App.) (2000).

In this case, Plaintiff's alleged disability would be substantial and significant if she were unable to perform her daily tasks as an office manager for Defendant. Plaintiff alleges that she fully, completely, and adequately performed all of her job duties during her entire employment with Defendant, including the period of time after she informed Defendant of her alleged condition and disability. (Dkt.16). Defendant denies that Plaintiff performed her job duties in such a manner. (Dkt.4). Defendant contends that Plaintiff missed work on several occasions, and that they were forced to hire more employees that would be able to cover Plaintiff's workload if she was unable to come into work. (Dkt.12). Once again, after examining the evidence in the light most favorable to Plaintiff, as the nonmoving party, the Court finds that Defendant perceived Plaintiff's alleged disability as substantially limiting and significant in relation to the type of employment involved. Plaintiff's alleged disability is hereby deemed substantially limiting and significant, for purposes of Defendant's Motion for Summary Judgment, to the extent that it precluded Plaintiff from performing her duties as an office manager, duties which still needed to be performed even when Plaintiff was unable to show up for work. This Court has already found that Plaintiff did not have a physical impairment which substantially limits one or more of Plaintiff's major life activities; however, with respect to the EEOC Interpretive Guidelines, Plaintiff is still considered to be "disabled" for purposes of the ADA, because Defendant perceived the alleged disability as constituting a substantially limiting impairment. Therefore, this Court finds that Plaintiff satisfies the third definition of disability under the ADA, in that she was regarded as having a disability by Defendant.

### 2. *Qualified Individual*

In addition to meeting the definition of disability, Plaintiff must be qualified to perform the essential functions of the office manager job. Determining whether an individual is "qualified" for a job is a two-step process. *See* 29 C.F.R. Part 1630.2(m) (App.) (2000); *see also Reed v. The Heil Company*, 206 F.3d 1055, 1062 (11th Cir.2000). The first step is to determine if Plaintiff satisfies the prerequisites for the position. Plaintiff claims that she is qualified because she has been employed as the office manager for Defendant for approximately twelve (12) years before her termination. (Dkt.16). Since Defendant has not contested the fact that Plaintiff possessed the appropriate educational background, and/or employment experience, to be initially hired, and to be promoted to the office manager job, and since Plaintiff was hired and remained in that position for several years, the Court finds that Plaintiff meets the criteria of the first step.

The second step is to determine whether Plaintiff can perform the essential functions of the office manager job, either with or without reasonable accommodations. The ADA provides that consideration shall be given to the employer's judgment as to what functions of a job are essential and the employer's written description for that job. *See* 42 U.S.C. § 12111(8) (2000).

Plaintiff's job duties included writing payroll checks, handling billing, and general office tasks. (Dkts.4, 12, 20). Plaintiff claims that she fully completed all of her duties (Dkt.16); however, Defendant denies this allegation. (Dkt.4). Plaintiff alleges that Defendant was concerned about her disability and about whether other employees of Defendant could handle her office duties if Plaintiff were unable to come into work for two (2) weeks or more. (Dkt.16). Defendant, once again, denies these allegations (Dkt.4).

Even though Defendant denies these allegations, it appears to the Court, when viewing the evidence in the light most favorable to Plaintiff, that Plaintiff was able to handle all of her duties as an office manager. Plaintiff was allowed to have

intravenous (IV) antibiotics administered while she was at work. Therefore, the Court finds that, at the time Plaintiff allegedly had her condition, Plaintiff was performing her job duties, albeit with the reasonable accommodations of getting injections at work.

If Plaintiff is unable to perform the essential functions of the office manager position, then Plaintiff has the burden of proving that reasonable accommodations were available and that with these accommodations she could perform the essential functions of the job. *See Reed,* 206 F.3d at 1062 (citing *Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997)). After reviewing the record, the Court finds that Plaintiff has met the burden of establishing her ability to perform the essential functions of her job. Plaintiff was able to perform the essential duties of her job as office manager. (Dkt.20). Defendant also allowed Plaintiff to procure a nurse that would come to Defendant's business and administer intravenous (IV) antibiotic injections to Plaintiff as were necessary, and on those days when Plaintiff received these injections at work, she continued working the rest of her shift. (Dkts.12, 20). Therefore, the Court finds that Plaintiff has established that she is a "qualified individual," and that Plaintiff was able to adequately perform the essential job functions as office manager for Defendant with such reasonable accommodations as were provided.

### 3. *Unlawful Discrimination*

As the Court has previously stated, in order to have a successful claim for disability discrimination under the ADA, a plaintiff must allege that: (1) she has a disability; (2) she is a "qualified individual," which is to say, able to perform the essential functions of the employment position she holds or seeks with or without reasonable accommodation; and (3) the defendant unlawfully discriminated against her because of the disability. *See Hilburn,* 181 F.3d at 1226; *Gordon,* 100 F.3d at 910;

*Pritchard,* 92 F.3d at 1132; *Morisky,* 80 F.3d at 447. The Court will next consider the issue of whether Defendant unlawfully discriminated against Plaintiff in its decision to terminate her employment.

When determining whether a plaintiff was discriminated against based on the plaintiff's alleged disability, the burden shifting analysis used in analyzing Title VII employment discrimination cases applies. *See Earl v. Mervyns, Inc.,* 207 F.3d 1361, 1365 (11th Cir.2000). Under *McDonnell Douglas Corp. v. Green* and *Texas Dept. Community Affairs v. Burdine,* the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). After the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Once the burden shifts to the defendant, the defendant is required to show a "legitimate nondiscriminatory reason" for the alleged discriminatory action. *See id.* The defendant is only required to produce a nondiscriminatory reason for the alleged discriminatory actions. *See id.* Defendant is not required to bear the burden of proof. *See id.* Thus, the burden of production that shifts to the defendant, once a plaintiff has established a *prima facie* case of discrimination, is "exceedingly light" and easily established. *See Perryman v. Johnson Products Co., Inc.,* 698 F.2d 1138, 1142 (11th Cir.1983). Once the defendant satisfies the burden of production, the plaintiff is required to prove by a preponderance of evidence that the defendant employer possessed a discriminatory intent, or that the defendant's alleged nondiscriminatory reason is a mere pretext for the adverse employment action. *See Burdine,* 450 U.S. at 256, 101 S.Ct. 1089. Summary judgment in favor of the defendant is appropriate if the plaintiff is unable to make a sufficient showing to rebut the defen-

dant's proffered reasons for the employment decision. *See Bogle v. Orange County Board of County Commissioners,* 162 F.3d 653, 658 (11th Cir.1998); *see also Maddow v. Procter & Gamble Co., Inc.,* 107 F.3d 846, 851 (11th Cir.1997); *Beno v. United Telephone Co. of Florida,* 969 F.Supp. 723, 726 (M.D.Fla.1997).

In the present case, Plaintiff states throughout the record that Defendant discriminated against Plaintiff based on Plaintiff's alleged disability. Specifically, Plaintiff claims that Defendant "acted with malice or with reckless indifference" to her federally protected rights in terminating Plaintiff because of her alleged disability. (Dkt.16). Plaintiff further contends that her alleged disability was the "sole or substantial motivating factor" for Defendant's decision to terminate her employment. (Dkt.16). Defendant vehemently denies Plaintiff's allegations. (Dkt.4).

In light of this evidence, the Court finds that Plaintiff has provided the Court with sufficient information as to whether Plaintiff was discriminated against based on Plaintiff's disability. As such, Defendant must produce at least one nondiscriminatory reason for allegedly taking the actions complained of, i.e., terminating Plaintiff's employment.

Defendant alleges and provides sufficient information to satisfy the burden of production under *McDonnell Douglas* and *Burdine* of a nondiscriminatory reason for terminating Plaintiff's employment. In satisfaction of this requirement, Defendant argues that Plaintiff was terminated from her employment because an investigation by Wayne Lambert, Defendant's President, revealed discrepancies in payroll. (Dkt.4). The investigation further revealed that Plaintiff had been issued more than one paycheck for a single pay period on several occasions, Plaintiff had received bonuses that were not due to her, and Plaintiff also had misappropriated other monies that were not owed to her. (Dkts.4, 12). Defendant contends that Plaintiff wrongfully exercised control over the property of Defendant, in that she misappropriated monies that were not owed to her, and that Plaintiff's continued payroll falsifications showed her intent to permanently deprive Defendant of the funds that Plaintiff wrongfully converted. (Dkts.4, 12). Defendant further argues that, as a result of Plaintiff's ongoing misappropriation of funds, Plaintiff was terminated for cause on November 20, 1998. (Dkts.4, 12).

■ As Defendant has provided sufficient information to establish a nondiscriminatory reason for terminating Plaintiff's employment, Plaintiff must now provide the Court with some evidence that Defendant's alleged nondiscriminatory action is a mere pretext. According to Plaintiff, Defendant's nondiscriminatory reason for terminating Plaintiff's employment is a pretext. (Dkts.18, 20). Plaintiff denies that she misappropriated any funds from Defendant, and contends that "all monies paid to or received by the Plaintiff from the Defendant were consented to and approved by Defendant." (Dkts.5, 20). Plaintiff does not deny taking the funds; however, Plaintiff claims that she was entitled to the funds and that they were not misappropriated illegally. (Dkts.5, 20). Plaintiff also claims that all excess compensation or multiple checks were in conformity with Defendant's well-established policy of allowing employees to be paid for accrued unused sick leave or vacation leave. (Dkts.5, 20). Plaintiff contends that, at her discretion, she elected to be paid for certain vacation time, in lieu of actually taking the time off from work. (Dkts.5, 20). Plaintiff also alleges that Defendant's decision to hire another employee to handle Plaintiff's duties when she was ill is also a pretext because Plaintiff claims that Defendant was going to terminate her regardless. (Dkt.18).

While it initially appears that Plaintiff has provided the Court with information to prove that Defendant's action of terminating Plaintiff's employment was a mere pre-

text, Plaintiff must be able to prove pretext by a preponderance of evidence. Thus, the Court must weigh the reasons behind Defendant's actions against Plaintiff's pretext argument to see if Plaintiff has proved pretext by the required preponderance of evidence. Wayne Lambert, President of Defendant, stated in his affidavit that Defendant does not have a policy allowing employees to receive additional pay for unused vacation time. (Dkt.12). Additionally, Wayne Lambert stated that during Plaintiff's employment with Defendant, Plaintiff was a salaried employee, and was, therefore, exempt from receiving overtime payments. (Dkt.12). This is why Defendant contends that Plaintiff was terminated for cause because of her continuous misappropriation of monies not owed to her over a period of time. (Dkt.4).

Even assuming, *arguendo*, that Plaintiff did not misappropriate Defendant's funds, and that Defendant was mistaken in this allegation, this does not change the analysis of Defendant's proffered reasons for terminating Plaintiff's employment. "[F]or an employer to prevail the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith believed plaintiff's performance to be unsatisfactory." *Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Moore v. Sears, Roebuck & Co.*, 683 F.2d 1321, 1323 n. 4 (11th Cir.1982)); *see also Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1962, 146 L.Ed.2d 793 (citations omitted) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct. An employer 'may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.' "); *Mitchell v. USBI Co.*, 186 F.3d 1352, 1354 (11th Cir.1999) ("This Court repeatedly has stated that it will not second-guess a company's legitimate assessment of whether an employee is qualified for a particular position."). Furthermore, under the "honest belief" rule, as long as the defendant honestly believed that the plaintiff had acted improperly, summary judgment should be granted for the defendant. *See Kariotis v. Navistar Intern. Transp. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997). Once again, Defendant's perception of Plaintiff's misconduct, with respect to misappropriating Defendant's funds, is asserted as the reason they believed Plaintiff could no longer perform the essential functions of her job as an office manager, i.e., being in charge of payroll and other company funds.

Furthermore, Plaintiff asserts that during the November 11, 1998, meeting she had with Bill Lambert, that Bill Lambert stated to Plaintiff, "[Y]ou know for us this business comes first. It has to go on even if you don't, and when you got sick before you really gave us a scare." (Dkt.16, 20). Bill Lambert's statement is not direct evidence of a discriminatory motive regarding Plaintiff's discharge, because, as was stated in Wayne Lambert's affidavit, Bill Lambert did not make the decision to terminate Plaintiff's employment. (Dkt.12); *see also Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 962 (11th Cir.1997) (stating that stray remarks and statements by nondecisionmakers do not constitute direct evidence of discriminatory discharge). Therefore, with respect to the discriminatory intent element in the *Burdine* analysis, Bill Lambert's comment to Plaintiff during the meeting is not evidence of Defendant possessing a discriminatory intent.

After thoroughly reviewing the entire record of this case, the Court finds that Plaintiff has failed to establish, by a preponderance of evidence, that Defendant's proffered nondiscriminatory reasons for Plaintiff's termination were pretextual. Defendant has articulated a legitimate, nondiscriminatory reason for

terminating Plaintiff's employment, in that Defendant reasonably and honestly believed that Plaintiff had misappropriated funds not owed to her, in violation of Defendant's company policy. Furthermore, "[c]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Bell v. Desoto Memorial Hospital, Inc.*, 842 F.Supp. 494, 498 (M.D.Fla.1994) (citations omitted).

Therefore, the Court finds that Defendant did not unlawfully discriminate against Plaintiff in their decision to terminate Plaintiff's employment. Thus, Plaintiff has failed to meet the third requisite element of establishing a *prima facie* case of discrimination based on disability, in violation of Title I of the ADA. As such, Defendant's Motion for Summary Judgment must be granted.

## V. *Conclusion*

Since this Court finds that the corrected affidavit of Beverly Cleland submitted by Defendant is timely filed, and that no portion of Beverly Cleland's affidavit therein contains any inadmissible hearsay which may be stricken, Plaintiff's Motion to Strike Affidavit of Beverly Cleland must be denied. Furthermore, because this Court concludes that Defendant did not unlawfully discriminate against Plaintiff in its decision to terminate her employment and that Plaintiff has failed to set forth a *prima facie* case of discrimination based on disability, in violation of Title I of the ADA, this Court finds that it is appropriate to grant Defendant's Motion for Summary Judgment. In addition, the Court notes and points out to the parties that Defendant filed a Counterclaim against Plaintiff. As this Counterclaim has not been disposed of on Summary Judgment, Defendant shall have ten (10) days from entry of this Order to notify this Court of the status of this Counterclaim. Accordingly, it is:

**ORDERED** that Plaintiff, Paulette B. Story's, Motion to Strike Affidavit of Beverly Cleland, (Dkt.17), be **DENIED,** that Defendant, Sunshine Foliage World, Inc.'s, Motion for Summary Judgment, (Dkt.11), be **GRANTED,** the Clerk of Court be **DIRECTED** to enter judgment in accordance herewith, and Defendant **SHALL HAVE** ten (10) days from entry of this Order to notify the Court of the status of the Counterclaim.