**Christina WEMMITT–PAUK, Plaintiff,**

v.

**The BEECH MOUNTAIN CLUB, Defendant.**

**No. 5:00CV48–H.**

United States District Court, W.D. North Carolina, Statesville Division.

March 1, 2001.

Christopher D. Lane, McElwee & McElwee, N. Wilkesboro, NC, for Plaintiff.

Steven D. Cogburn, Cogburn, Goosmann, Brazil & Rose, P.A., Asheville, NC, for Defendant.

### MEMORANDUM AND ORDER

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendant's "Motion for Summary Judgment" (document # 17), "Memorandum ... in Support ..." (document # 18), and "Affidavit of William L. Sposato ..." (document # 19), all filed January 16, 2001. "Plaintiff's Memorandum ... in Opposition

..." (document # 20) was filed February 2, 2001; and "Defendants' Reply ..." was filed February 13, 2001 (document # 21).

The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and this motion is now ripe for disposition.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant* the Defendant's Motion for Summary Judgment.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is an action for damages and equitable relief under the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.;* the Family and Medical Leave Act of 1993 ("FMLA"), as amended, 29 U.S.C. § 2601 *et seq.;* and the Fair Labor Standards Act, ("FLSA"), as amended, 29 U.S.C. § 216 *et seq..*

The Plaintiff, Christina Wemmitt–Pauk, date of birth November 3, 1952, is now a citizen and resident of Cumberland County, North Carolina. The Defendant, Beech Mountain Club ("BMC"), is a non-profit corporation organized under the laws of North Carolina. BMC operates a country club in Watuaga County, North Carolina, which offers its members a summer Day Camp for children five to ten years old and a Youth Program for older children and teenagers.

In May 1996, the Plaintiff began seasonal employment—22 weeks in 1996 and 16 weeks in 1997—with BMC as the Day Camp Director. The Plaintiff and BMC executed separate contracts each year and the Plaintiff was paid a weekly salary. The Youth Program was managed separately by the Director of Youth.

In late 1997, BMC combined the Day Camp and the Youth Program into a Youth Recreation Program. The former positions of Day Camp Director and Director of Youth were combined to form the Director of Youth Recreation position, which was offered to the Plaintiff.

On November 3, 1997, the parties entered into an Employment Contract ("Contract") wherein the Plaintiff performed 40 weeks of "active employment"—that is, December 22, 1997 to January 31, 1998 and March 1, 1998 to October 24, 1998. Her annual salary of $16,800 was paid biweekly, retroactive to October 1, 1997, and she received insurance, retirement, and other benefits.[1] The Contract did not prescribe the Plaintiff's work hours, but did describe her responsibilities as Director of the new program.[2]

The Plaintiff reported directly to Melissa Williams, BMC's Recreation Director, but, under the terms of the Contract, was also supervised by BMC's General Manager William L. Sposato.

Plaintiff alleges that BMC, through Ms. Williams and Mr. Sposato, discriminated against her on the basis of her age, refused to pay her overtime pay to which she was entitled, and terminated her employment on November 2, 1998, rather than allow her to take medical leave prescribed by her doctor.

The Complaint and the Plaintiff's affidavit, attached to the "Plaintiff's Memoran-

---

**1.** The contract states that Plaintiff's new position was a "permanent, part-time" position and that her salary was paid "year round" in order to qualify the Plaintiff for benefits "on a similar scale to full time employees." *See* Contract at land 3, attached as Exhibit B to

"Affidavit of William L. Sposato ..." (document # 19).

**2.** These responsibilities included interviewing prospective staff, managing the staff, planning program activities, and, along with her supervisors, preparing the program budget.

dum ... in Opposition ..." (document #20), are replete with unspecified and conclusory allegations of discrimination. However, even after resolving factual disputes in the Plaintiff's favor, there are few specific facts supporting her claims of age discrimination. The Plaintiff claims that on July 8, 1998, Ms. Williams told other employees that "older employees needed to be kept in line"; that on July 17, 1998, Ms. Williams told the Plaintiff that "[Ms. Williams] might be young and [the Plaintiff] might be older than [Ms. Williams], but [Ms. Williams] was still the boss" and Ms. Williams would "break" the Plaintiff and "take everything away from [the Plaintiff]"; and that on July 24, 1998, Ms. Williams told the Plaintiff that "[Ms. Williams] was considering giving the program to someone younger who would listen."

As to Mr. Sposato, the Plaintiff avers without specificity that he "frequently made disparaging remarks about BMC's older employees ."

On July 26, 1998, the Plaintiff wrote a letter to Mr. Sposato and BMC Board member Nancy Kaltenbach complaining of Ms. Williams' "harassment and abuse." Plaintiff states that Mr. Sposato's only response to the letter was to tell the Plaintiff "to work things out with Ms. Williams."

Contrary to the Plaintiff's unsupported characterizations, there is undisputed evidence that she was not a good manager of her expanded staff nor was the combined Youth Recreation Program very successful—particularly for the teenagers.

The Plaintiff admits that on July 21, 1998, a scheduling mistake resulted in the youth arriving at the club for a "Teen Day" swim party only to find the pool closed; that on July 30, 1998, she was "unable to maintain full control" of the teenage participants during "Circus Day"; and that in August, 1998, after the season ended, the Plaintiff and her staff failed to satisfactorily clean and "break down" the recreation facilities. Although the Plaintiff admits that Ms. Williams attributed this final failing to the Plaintiff managing her staff poorly, she claims that Ms. Williams' repeated directions to re-clean the facilities were a result of discrimination.

The Plaintiff contemporaneously acknowledged the difficulties encountered in combining the programs. In a September 27, 1998 letter to the "Youth, Parents, and Grandparents," she made reference to "growing pains" and "fix[ing] what isn't ... working."

Further, in an undated note to the Plaintiff and her staff, Ms. Williams stated "[i]ts been a rough year, but we've held on tight!"

The Plaintiff avers that during an end-of-season performance evaluation on October 13, 1998, Ms. Williams asked her "how [she] thought [her] age had played a role in the youth program," asked what materials and equipment the Plaintiff would need for the following summer, and told her that "[she] was doing a great job."

On October 15, 1998, the Plaintiff met with Mr. Sposato and Ms. Williams. Mr. Sposato informed the Plaintiff that the children's programs were being returned to their former structure, that is, two programs, a Day Camp and a separate Youth Program. It is undisputed that Mr. Sposato offered the Plaintiff her former job as summer Day Camp director—a 26 week job commencing in December 1998—as "a second chance," and that the Plaintiff declined the job and went home.

Plaintiff avers that when she got home after this meeting, she suffered a "panic attack," and called Dr. Steven Cook, her family physician. Dr. Cook prescribed Xanax, told the Plaintiff to "stay away" from the club, and made an appointment to see

her in his office on Monday, October 19, 1998.

There is great dispute as to whether the Plaintiff was able to return to work for the balance of her contract—that is, through October 24, 1998—and when and how the Plaintiff subsequently informed the BMC that she would not return to work.[3] In the light most favorable to the Plaintiff, she spoke to Ms. Williams by phone on the afternoon of October 15, 1998, and informed her that she could not come back to work "until Dr. Cook released [her]." On October 19, 1998, Dr. Cook faxed the BMC a note stating that the Plaintiff would be out of work until October 26, 1998. There is no evidence that the Plaintiff requested any further leave from work.

The Plaintiff admits, however, that the day after her "panic attack"—October 16, 1998—she was well enough to "work a booth" for the local Kiwanis club at the Wooly Worm Festival in Banner Elk and that Mr. Sposato saw her there.

In a November 2, 1998 letter, Mr Sposato wrote the Plaintiff:

At this point, we do not believe it is in the best interest of the Club to retain you as an employee with what has transpired, in addition to your apparent inability to accept constructive criticism and direction from your supervisor. You have also violated our Club policy relative to being absent from work and not notifying your supervisor. For those reasons, we are terminating your employment with the Club.

BMC subsequently filled the Plaintiff's former position as Day Camp director with Carolee Hayler, age 49—three years older than the Plaintiff.[4] The revived Director of Youth position was filled by Rebecca Osborne, age 22.

Related to her claim for overtime pay, the Plaintiff avers only that she often worked in excess of 40 hours per week and more than 14 hours per day. It is undisputed, however, that the Plaintiff worked an average of less than 38 hours per week during her "active employment" in 1998, and was never directed or authorized to work "overtime."

On April 28, 1999, the Plaintiff filed an administrative charge of age discrimination with the Equal Employment Opportunity Commission, which issued the Plaintiff a "right to sue" letter on November 4, 1999.

On February 3, 2000, the Plaintiff filed a "Motion to Commence Action ... and to Extend Time to File Complaint" in Watauga County Superior Court. Within the 20 day extension allowed by the state court, the Plaintiff filed the subject Complaint, alleging a claim under the Age Discrimination in Employment Act of 1967 ("the ADEA"), as amended, 29 U.S.C. § 621 et seq.; the Family and Medical Leave Act of 1993 ("the FMLA"), as amended, 29 U.S.C. § 2601 et seq.; and the Fair Labor Standards Act, ("FLSA"), as amended, 29 U.S.C. § 216 et seq.

On March 21, 2000, the Defendant removed the state action to this Court based on federal question jurisdiction. Removal appears to be proper and has not been challenged by the Plaintiff.

On January 16, 2001, Defendant filed its Motion for Summary Judgment which has been fully briefed and is ripe for determination. Because the record, even when taken in the light most favorable to the

---

3. It is undisputed that the Plaintiff never returned to work but that, nevertheless, the BMC paid the Plaintiff's salary through October 24, 1998, the end of her contract.

4. The day after BMC sent the letter, November 3, 1998, was the Plaintiff's 46th birthday.

Plaintiff, fails to disclose an issue of material fact, the Court will *grant* the Defendant's motion, as discussed below.

## II. *DISCUSSION OF CLAIMS*

### A. *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *See also Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). Once the movant has met its burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505; *Miltier v. Beorn,* 896 F.2d 848 (4th Cir.1990); *Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

### B. *ADEA Claim*

Plaintiff's First Claim for Relief is brought under the ADEA, which prohibits employers from "fail[ing] or refus[ing] to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

In order to prove an ADEA claim, an employee may proceed under ordinary principles of proof using direct or indirect evidence, or under the paradigm for indirect proof of employment discrimination set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Burns v. AAF–McQuay, Inc.,* 96 F.3d 728, 731 (4th Cir. 1996) (applying *McDonnell Douglas* framework in ADEA context). To overcome a summary judgment motion based upon direct or indirect evidence of discrimination, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Brinkley v. Harbour Recreation Club,* 180 F.3d 598, 607 (1999), *quoting Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988). The plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id., citing Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir.1995). However, in the absence of such direct or indirect evidence, "the plaintiff may nevertheless proceed under McDonnell Douglas." *Id.*

Generally speaking, under *McDonnell Douglas,* if the employee establishes a prima facie case of illegal discrimination (as discussed below), then the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its employment decision. 411 U.S. at 802,

93 S.Ct. 1817. If the employer does so, the presumption of discrimination "drops from the case" and the employee must demonstrate that the employer's stated reason for its action was in fact a pretext for improper discrimination. *Id.* at 804, 93 S.Ct. 1817.

■■■ The Supreme Court has made clear that the plaintiff at all times "bears the ultimate burden of proving ... intentional discrimination." *Runnebaum v. NationsBank of Maryland,* 123 F.3d 156, 164 (4th Cir.1997) (en banc), *citing St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (holding that a prima facie case plus disbelief of employer's asserted justification for employment action is not necessarily sufficient to establish a violation and that, in such cases, summary judgment is appropriate unless the plaintiff presents adequate evidence that the employer unlawfully discriminated). Thus, ultimately, under either test, "[t]o withstand summary judgment, [a claimant] must produce direct or circumstantial evidence 'of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact.'" *Burns,* 96 F.3d at 732, *citing EEOC v. Clay Printing,* 955 F.2d 936, 941 (4th Cir.1992), *and Henson v.. Liggett Group, Inc.,* 61 F.3d 270, 275 (4th Cir.1995). "[I]f the plaintiff offers nothing to disprove the defendant's non-discriminatory explanations, the explanations' weakness alone is insufficient to create an issue of pretext, [and] ... the burden of production returns to the plaintiff to present affirmative evidence of age-based animus." *Id.*

The case law regarding the elements of a prima facie case under the ADEA has been evolving somewhat since the Supreme Court's decision in *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996). Prior to that case, the Fourth Circuit had required an age discrimination plaintiff to establish the following four elements:

> (1) [that] he was in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge or demotion, he was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, he was replaced by someone of comparable qualifications outside the protected class.

*Id.* at 310, 116 S.Ct. 1307. In *O'Connor,* the Court invalidated the fourth element of this case, holding that whether the persons actually hired, promoted, or retained were outside the ADEA's "protected class" of individuals over forty was irrelevant, so long as the plaintiff could establish that their relative youth—in comparison to the age of the plaintiff—was the reason they were given favorable treatment. *Id.* at 310–312, 116 S.Ct. 1307. As the Fourth Circuit noted in *Burns,* however, the Supreme Court did not provide an alternative to the invalidated fourth element. 96 F.3d at 731 n. 1.

In the wake of *O'Connor,* the Fourth Circuit has formulated the fourth element in two slightly different ways. In *Halperin v. Abacus Corp.,* 128 F.3d 191, 201 (4th Cir.1997), the court held that the plaintiff must show that the adverse action "occurred under circumstances that raise a reasonable inference of unlawful age discrimination," while in two unpublished decisions, the plaintiff was required to show that he or she was replaced by someone "substantially younger" than the plaintiff. *See Parrish v. United Steelworkers of America,* 1997 WL 355635, at *2 (4th Cir. 1997); *Devan v. Barton–Cotton, Inc.,* 1998 WL 183844, at *4 (4th Cir.1998).

Applying the foregoing principles in the instant case, Plaintiff's evidence is insuffi-

cient to state a prima facie case of age discrimination claim (no matter how the fourth element thereof is formulated). The only undisputed element of the prima facie case is that the Plaintiff was more than 40 years old at all times relevant to this action. Assuming without deciding that the Plaintiff has met the fourth element—that is, that *some* of her duties as Director of Youth Recreation were reassigned to someone substantially younger—she has still clearly failed to establish two of the required elements of a prima facie case.

■ Even resolving the facts in the light most favorable to the Plaintiff, she was not discharged nor demoted. Rather, her 1998 position was eliminated for a valid business purpose. The new combined program was not a success—a fact that the Plaintiff acknowledged in her letter to club members—and BMC decided to return the children's programs to the successful format used every year prior to 1998. Moreover, BMC offered the Plaintiff her old position and she *refused* it.

■ Nor has the Plaintiff shown that she was performing her job to BMC's legitimate expectations. The *only* fact that the Plaintiff offers in this regard is Ms. Williams' out-of-context statement that the Plaintiff did "great." However, the record reflects generally that the 1998 summer program was "rough," and that the Plaintiff did not meet her employer's expectations in several regards, particularly her added responsibilities of coordinating the teenagers' activities and managing an expanded staff. Moreover, when the program was returned to its original format, Plaintiff was offered position of Day Camp Director—the position she first held—explicitly as a "second chance."

■ Even were the Court to assume *arguendo* that the Plaintiff had made out a prima facie case of age discrimination, BMC has offered evidence that the Plain-

tiff's position was eliminated due to the failure of the combined program; that the Plaintiff's job performance was unacceptable; that she refused the offer of her former position; and that after she refused to work the last week of her existing contract, BMC decided to sever their relationship entirely. In other words, the Defendant has clearly "articulate[d] some legitimate, non-discriminatory reason[s] for its employment decision." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

For the same reasons that the Plaintiff is unable to make out a prima facie case, she is equally unable to establish that BMC's stated reasons are "merely pretextual" and carry her "ultimate burden of proving intentional discrimination." *Runnebaum,* 123 F.3d at 164, *citing, St. Mary's Honor Ctr.,* 509 U.S. at 506–11, 113 S.Ct. 2742. As discussed above, the Plaintiff's *own* affidavit clearly establishes that the summer program was not a success and that she generally had not performed satisfactorily in the position of Director of Youth Recreation.

Moreover, the BMC subsequently offered the Day Camp director position to an employee *older* than the Plaintiff. That uncontroverted fact, along with the BMC's expressed initial desire to retain the Plaintiff despite her failure at managing the combined program, belie the Plaintiff's conclusory allegations of discrimination. *Accord Causey v. Balog,* 162 F.3d 795, 800 (4th Cir.1998) (employer's neutral treatment of age supports its stated nondiscriminatory reasons for eliminating plaintiff's position); *and Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991) ("employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing").

In short, where, as here, there is no issue of material fact as to the Plaintiff's claim of age discrimination, the Defen-

dant's Motion for Summary Judgment must and will be granted as to the Plaintiff's ADEA claim.

## C. *FMLA Claim*

The FMLA provides that an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period because of a "serious health condition" that makes the employee unable to perform the functions of her employment position. *See* 29 U.S.C. § 2612(a)(1). An eligible employee who takes FMLA leave shall be entitled, upon return from that leave, to be restored to the position held prior to leave, or to an equivalent position. *See* 29 U.S.C. § 2614(a)(1).

■ However, an employee suffers a "serious health condition" only if the condition requires inpatient or ongoing outpatient treatment. *See* 29 U.S.C. § 2611. Further, an employee, while not required to request "leave under the FMLA," must give sufficient notice to allow the employer to determine if FMLA leave is required. *Accord Satterfield v. Wal–Mart Stores, Inc.*, 135 F.3d 973, 976 (5th Cir.1998) (meager information that employee imparted to her employer, that she had pain in her side, was sick, and could not come in that day, was not sufficient under FMLA), *cert. denied*, 525 U.S. 826, 119 S.Ct. 72, 142 L.Ed.2d 57 (1998); *and Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997) (employee did not give adequate notice of need to support FMLA claim where employee's wife told employer that he was sick and would be "out for awhile," and employee later informed employer that he would be out, but offered no further information and stated that he did not know when he would return).

■ In order to prove that she was discharged in retaliation for requesting FMLA leave, the Plaintiff may proceed under ordinary principles of proof using direct or indirect evidence,[5] or under the paradigm for indirect proof of employment discrimination set out in *McDonnell Douglas, supra*. *See Brungart v. BellSouth Telecomm. Inc.*, 231 F.3d 791, 798 (11th Cir.2000) (applying *McDonnell Douglas* to FMLA retaliatory discharge claim); *Gleklen v. Democratic Congressional Campaign Committee, Inc.*, 199 F.3d 1365, 1367 (D.C.Cir.2000) (same); *Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 & n. 10 (5th Cir.1999) (same); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159–60 (1st Cir.1998) (same); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir.1997) (same); *Sharpe v. MCI Telecommunications Corp.*, 19 F.Supp.2d 483, 488 (E.D.N.C.1998) (same); *Dodgens v. Kent Mfg. Co.*, 955 F.Supp. 560, 563 (D.S.C. 1997) (same); *and Leary v. Hobet Mining, Inc.*, 981 F.Supp. 452, 456 (S.D.W.Va.1997) (same). *Accord Cline v. Wal–Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir.1998) ("*As with any claim of discrimination,* [plaintiff] is permitted ... to prove his [ADA] case by ... *McDonnell Douglas* ") (emphasis added).

Regarding the *McDonnell Douglas* scheme in the retaliatory discharge context, the Fourth Circuit recently stated:

First, the plaintiff must establish a prima facie case of retaliation. The burden then shifts to the employer to produce a legitimate nondiscriminatory reason for the adverse action. The plaintiff must then demonstrate that the employer's reason was mere pretext for retaliation by showing both that the reason was

---

**5.** It is undisputed that the Plaintiff was paid through the end of her contract, that is, October 24, 1998. Further, the Plaintiff has offered no direct evidence that she was discharged in retaliation for requesting FMLA leave.

false and that discrimination was the real reason for the challenged conduct. *Smith v. First Union Nat. Bank,* 202 F.3d 234, 248 (4th Cir.2000) (internal quotations and citations omitted).

 To establish a prima facie case of retaliatory discharge, a plaintiff must prove that she engaged in protected activity, that the employer took adverse employment action against her, and that a causal connection existed between the protected activity and the adverse action. *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989).

Applying the foregoing principles in the instant case, Plaintiff's evidence insufficient to state a prima facie case of retaliatory discharge.

 The Plaintiff never engaged in a "protected activity" under the FMLA; that is, she was not eligible for FMLA leave. Resolving all factual disputes in favor of the Plaintiff, she was unable to work from October 15 through October 26, 1998, due to "panic attacks." The Plaintiff spoke to her doctor once by telephone and had one office visit. Other than Dr. Cook's "work excuse," no medical records were submitted and there is no documentation of any "serious health condition" requiring further medical treatment. *See* 29 U.S.C. § 2611. Further, there is no evidence that the Plaintiff ever notified BMC that she needed additional leave beyond October 26, 1998, or in any other way gave BMC sufficient notice. *Accord Satterfield,* 135 F.3d at 976; *and Carter,* 121 F.3d at 1148.

 As discussed above and for the same reasons that the Plaintiff failed to show she was discharged or demoted for purposes of her ADEA claim, she has also failed to show that BMC "took an adverse employment action against her." Therefore, she has not met the second prima facie element for retaliatory discharge.

Lastly, even *if* the Plaintiff could make out a prima facie case, BMC articulated several nondiscriminatory reasons for its decisions. As discussed above, the Plaintiff has wholly failed to establish that BMC's stated reasons are "merely pretextual" and carry her "ultimate burden of proving intentional discrimination." *Runnebaum,* 123 F.3d at 164, *citing, St. Mary's Honor Ctr.,* 509 U.S. at 506–11, 113 S.Ct. 2742.

Accordingly, the Defendant's Motion for Summary Judgment will be granted as to the Plaintiff's FMLA claim as well.

### D. *FLSA Claim*

The FLSA requires that employers pay their employees time and a half for work over forty hours a week. *See* 29 U.S.C. § 207(a)(1). The FLSA, however, provides an exemption from the overtime requirement for persons "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 213(a)(1)

 The parties agree that because the Plaintiff's salary was more than $250 a week the appropriate test for determining whether she was an executive employee is the Department of Labor's "short test." *See* 29 C.F.R. § 541.1(f) (1998). Under the short test, an employee is exempt from the FLSA's requirements if she supervises at least two employees and spends more than 50% of her time managing a "recognized subdivision" of the relevant department. *Id.* Alternatively, if an employee supervises at least two employees and spends less than 50% of her time on managerial duties, she may still be exempt if "[o]ther pertinent factors ... indicate that management is the employee's primary duty." *Shockley v. City of Newport News,* 997 F.2d 18, 25–26 (4th Cir.1993). *Accord Smith,* 202 F.3d at 250 (team leader's primary duty consisted of managing bank adjustors, even though she spent 80 to

90% of her time working as adjustor rather than supervising other adjustors); *and West v. Anne Arundel County,* 137 F.3d 752, 763 (4th Cir.1998).

Applying those principles to these facts, it is readily apparent that the Plaintiff was exempt from overtime requirements as an "executive" within the meaning of § 213(a)(1). It is undisputed that she supervised more than two employees. There is no evidence in the record as to the percentage of Plaintiff's time spent "on managerial duties." The record reflects, however, that she spent most, if not nearly all of her time, directing the staff and participants in the Youth Recreation Program and planning program activities. *Accord Smith,* 202 F.3d at 250.

In short, as a salaried manager, the Plaintiff was not entitled to overtime pay, and therefore, the Defendant's Motion for Summary Judgment will be granted as to the Plaintiff's FLSA claim.

### III. *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DE-CREED:

1. "Defendants' Motion for Summary Judgment" (document # 17) is **GRANTED** and the Complaint is hereby **DISMISSED WITH PREJUDICE.**

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.