**Bonnie Lee MOREHARDT, Plaintiff,**

v.

**SPIRIT AIRLINES, INC., Defendant.**

**No. 5:00CV331–OC–GRJ.**

United States District Court,
M.D. Florida,
Ocala Division.

Nov. 9, 2001.

Stuart Arthur Goldstein, Law Office of Stuart A. Goldstein, Miami, FL, for Bonnie Lee Morehardt.

Bonnie Lee Morehardt, Ocala, FL, pro se.

Eric James Holshouser, Coffman, Coleman, Andrews & Grogan, P.A., Jacksonville, FL, Daniel J. Bretz,, Brady Hathaway, P.C., Detroit, MI, for Spririt Airlines, Inc.

## MEMORANDUM DECISION AND ORDER

JONES, United States Magistrate Judge.

Pending before the Court is Defendant's Motion To Dismiss And For Summary Judgment (Doc. 33) and the Brief In Support of Defendant's Motion To Dismiss And For Summary Judgment. (35.)[1] Plaintiff filed a memorandum in opposition to the motion for summary judgment (Doc. 47) and also requested that the Court defer ruling on Defendant's motion for summary judgment to enable Plaintiff to conduct further discovery. (Doc. 45.) Defendant filed its opposition to the continuance (Doc. 48), and after hearing argument of counsel on Plaintiff's request, the Court continued disposition of Defendant's motion for summary judgment, granted Plaintiff leave to conduct further discovery and directed the parties to file supplemental briefs on the retaliation claim alleged by Plaintiff under the Family Medical Leave Act ("FMLA").

Further discovery was conducted by Plaintiff and Defendant filed a Supplemental Brief In Support of Motion To Dismiss And For Summary Judgment. (Doc. 52.)[2] Plaintiff filed her Supplemental Memorandum Of Law In Opposition To Defendant's Motion To Dismiss and for Summary Judgment (Doc. 59) with attachments.[3] Lastly, because the Plaintiff had raised issues with regard to the supplemental discovery, the Defendant filed a reply to Plaintiff's memorandum in opposition. (Doc. 56.) Accordingly, the matter is now ripe for disposition. For the reasons discussed below the Court concludes that Defendant's Motion For Summary Judgment is due to be **GRANTED**.

### I. BACKGROUND AND FACTS

The pleadings, memoranda, affidavits, and other evidence in the record, construed in the manner most favorable to the Plaintiff, disclose the following details.

Plaintiff is a former pilot for Defendant Spirit Airlines ("Spirit"). Plaintiff alleges that she was terminated in violation of the FMLA, 29 U.S.C. § 2601 *et seq.* and on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* and the Michigan Elliott–Larsen Civil Rights Act, M.C.L.A. 37.2101 *et seq.*

Plaintiff was employed as a pilot for Spirit from August 13, 1996 to November 30, 1998. On April 26, 1998, Plaintiff requested and was granted a leave of absence to assist her stepdaughter with her

---

1. Appended to the Defendant's brief are the affidavits of Barbara Jennings and David Cessante with exhibits. Defendant also filed the deposition of Bonnie Lee Morehardt (Doc.37).

2. Appended to the Supplemental Brief was the Amended Affidavit of Barbara Jennings (Ex. 1) with attachments.

3. Appended to Plaintiff's Supplemental Brief were the affidavits of Bonnie Lee Morehardt (Ex. A), Kenneth Oden (Ex. C) and Vernon Trimble (Ex. G) and the deposition of Brian Millette (Ex. D).

recently born baby.[4] Subsequently, this leave was extended until the end of June 1998 by Plaintiff's supervisor, Chief Pilot Brian Millette.[5] During the end of June or beginning of July 1998, Plaintiff notified Spirit that she had suffered an eye injury and as a result advised Spirit that she would not be able to fly the next trip.[6] On July 30, 1998 Brian Millette agreed to convert Plaintiff's personal leave to medical leave because of the eye injury Plaintiff alleged she had suffered.[7]

Between July and September 1998 Plaintiff was granted several extensions of her leave. Because of the eye injury the Plaintiff could not provide Spirit with a date certain when she would be able to return to work and fly. On or around November 3, 1998 Brian Millette sent a letter to Plaintiff advising her that she was required to report for duty no later than November 16, 1998 for requalification training and that she would be required to present a current medical and release from her doctor.[8] On November 13, 1998 Plaintiff attended a meeting with Brian Millette to discuss the issue of whether she was able to report on November 16, 1998.[9] Although the parties characterize the tenor of the meeting differently, and disagree whether there was full disclosure by Plaintiff, it is undisputed that Plaintiff discussed her eye condition and her leave was extended to November 30, 1998. Plaintiff was requested to report to Brian Millette by telephone on November 30, 1998 to further update the status of her eye problem.

On November 30, 1998, as instructed, Plaintiff telephoned Brian Millette to discuss her situation. According to Plaintiff, during this telephone conversation she orally made a request for leave under the FMLA and was told by Brian Millette that she "could not do so because she was in bad standing with the Company [Spirit]." [10] Further, according to Plaintiff, during the conversation Brian Millette never made any mention of terminating Plaintiff.[11] The next day—December 1, 1998—Plaintiff telefaxed an FMLA request to Spirit.[12]

According to Spirit, the decision to terminate Plaintiff was made by Brian Millette on November 30, 1998 before he received the December 1st formal written request for FMLA leave.[13] It is undisputed, however, that the necessary paperwork to formally terminate Plaintiff—consisting of an Employee Action Report and a Termination Report—were completed by Brian Millette on December 2, 1998 [14], although the termination was effective November 30, 1998. Notwithstanding whether the Plaintiff was or was not advised that she was terminated during the November 30th telephone conversation, it is undisputed that she was told on November 30th, and prior to submitting the written FMLA request, that she was ineligible for FMLA leave.[15]

4. Doc. 37, 116–120.

5. *Id.* 223–224.

6. *Id.* 123.

7. *Id.* 123, 130, 136–137, 224; Doc. 35, Ex. 1.

8. Doc. 35, Ex. 2.

9. The meeting was attended by Plaintiff, Brian Millette and Vernon Trimble the Union representative.

10. Doc. 59, Ex. A. ¶ 16.

11. *Id.*

12. *Id.* ¶ 7; Doc. 59, Ex. D.

13. Doc. 59, Ex. D at 55–56.

14. Doc. 59, Ex. D at 62–64; Doc 59, Exs. E & F.

15. Doc. 56, Ex. 2 (Sworn EEOC Charge executed by Plaintiff).

Spirit's Employee Handbook—which was provided to Plaintiff—provides that employees who have been with the company for more than a year and have worked at least 1,250 hours during the preceding year are entitled to up to 12 weeks of unpaid, job protected leave over a 12 month period.[16] It is undisputed that Plaintiff did not work 1,250 hours in any of the years preceding her leave. In calendar year 1997 Plaintiff worked 465.8 hours and in calendar year 1998 Plaintiff worked 157.4 hours.[17] From December 1, 1997 to November 30, 1998—the twelve month period prior to her FMLA request—the Plaintiff worked a total of 212.5 hours in flight time, a total of 46.9 hours on the ground between flights and that during this time period she only flew a total of 38 days.[18] Accordingly, there is no factual dispute in the record that the Plaintiff did not work more than 1,250 hours in the twelve month period preceding her FMLA request, even if a liberal interpretation of hours worked is utilized to calculate the hours worked during this time period.[19]

On August 1, 1999 the Plaintiff filed her Charge of Discrimination with the EEOC alleging that she was terminated because of her sex.[20] On September 24, 1999 the EEOC dismissed the charge and sent the Notice of Right To Sue Letter to Plaintiff, which was received by Plaintiff's husband on September 27, 1999 and subsequently also was received by Plaintiff's attorneys in October, 1999.[21] Within 90 days of receipt of the Right To Sue Letter by her husband, Plaintiff filed a one count complaint alleging a violation of the FMLA, but not alleging a violation of Title VII. On April 23, 2001 leave was granted by the Court permitting Plaintiff to amend the complaint to allege, for the first time in this case, claims of gender discrimination under Title VII and under the Michigan Elliott–Larsen Civil Rights Act.

## II. *SUMMARY JUDGMENT STANDARD*

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party."[22] As the Supreme Court held in *Celotex Corp. v. Catrett*,[23] the moving party bears the initial burden of informing the court of the basis of the motion and of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[24] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to

---

16. Doc. 35, Ex. 5.

17. Doc. 52, Ex. 1 ¶ 4.

18. *Id.* at ¶¶ 4, 5, 6, & 7.

19. For example, even if it was assumed that of the 38 days in which Plaintiff flew she worked around the clock for 24 hours the total number of hours worked would still be significantly short of the required 1,250 hours.

20. Doc. 35, Ex. 10.

21. *Id.*, Exs. 11, 12 and Cessante affidavit.

22. *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988)

23. 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)

24. *Rollins v. TechSouth,* 833 F.2d 1525, 1528 (11th Cir.1987)

interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[25] In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[26] An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."[27]

## III. DISCUSSION

### A. Title VII Claim For Gender Discrimination

Plaintiff's claim for gender discrimination under Title VII can be disposed of summarily because it is undisputed that the claim was filed untimely.

■■■ The EEOC Right To Sue Letter was received and signed for by Plaintiff's husband, Kenneth Oden, on September 27, 1999. The date of receipt of the Notice of Right To Sue Letter by the spouse of a claimant at the marital residence, and not the date when the claimant actually reviews the letter, triggers the running of the 90 day period within which a claimant must file suit in order to bring a Title VII claim.[28] In addition, the attorneys for Plaintiff acknowledged receipt of the Right to Sue Letter in October 1999. Receipt of the Right to Sue Letter by claimant's counsel is binding on the claimant notwithstanding whether the claimant actually receives the notice from the EEOC.[29]

■■■ Because the Plaintiff did not include her claim for gender discrimination under Title VII when her original complaint was filed in December 1999 her Title VII claim filed in April 2001 was untimely and, thus, is subject to dismissal. Plaintiff concedes in her opposition that her Title VII claim is untimely in view of the fact that her husband received the Notice of Right To Sue more than 90 days before she filed her Title VII claim. Accordingly, Defendant's motion for summary final judgment as to Count II of Plaintiff's Amended Complaint is due to be **GRANTED**.

### B. Violation of the FMLA

Although different types of claims are not clearly delineated in the actual language in the FMLA, the Eleventh Circuit, as well as other courts, have, nonetheless, held that the FMLA creates two distinct types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA, and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected under the FMLA.[30]

It is unclear whether Plaintiff has intended to pursue both an interference and retaliation claim. Although, Plaintiff appears to mention only an "interference" type claim in paragraph 22 of the Amended Complaint she does suggest in paragraph 23 that she was terminated "as a result of her FMLA request." Moreover, in her opposing brief Plaintiff solely char-

---

**25.** *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

**26.** *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

**27.** *Id.* at 587, 106 S.Ct. 1348.

**28.** *Bell v. Eagle Motor Lines, Inc.*, 693 F.2d 1086, 1087 (11th Cir.1982); *Million v. Frank*, 47 F.3d 385, 387–388 (10th Cir.1995).

**29.** *See, Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435. 92–93 (1990).

**30.** *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir.2001); *Wascura v. City of South Miami*, 257 F.3d 1238, 1247–48 (11th Cir. 2001).

acterizes her claim as a retaliation claim. The Court, therefore, concludes that although the Amended Complaint is less than a model of clarity on this issue, a broad reading of the Amended Complaint suggests that Plaintiff intended to present both types of claims. Accordingly, the Court will address whether Plaintiff can succeed under either theory.

Because the interference claim can be disposed of easily the Court will first address the issue of whether the Plaintiff was eligible under the FMLA for leave and, thus, whether the Defendant interfered with her rights under the FMLA. The Court will then address whether the Plaintiff can pursue a claim for retaliation under the FMLA even if she was not eligible for leave under the FMLA.

### 1. *Plaintiff Was Not Illegally Denied Leave Under the FMLA.*

██ To state a claim for interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he or she was entitled to the benefit denied.[31]

██ An eligible employee under the FMLA is defined as an employee who has been employed for at least 12 months and has worked at least 1,250 hours for that employer within that 12 month period.[32] It is undisputed that Plaintiff had not worked at least 1,250 hours within any 12 month period that she requested leave. Therefore, the Plaintiff is an ineligible employee under the FMLA and cannot claim that she was denied benefits under the FMLA.

██ Alternatively, even if Plaintiff was eligible for leave under the FMLA,

she was only entitled to 12 weeks of leave, which she had exhausted prior to her request for leave under the FMLA in November 1998. There is no dispute in the record that Plaintiff was on leave for approximately seven months. Plaintiff originally took leave in April 1998 to help her stepdaughter with her new baby and then beginning in late June 1998 she was out on leave for five more months because of an injury to her eye. This period was well in excess of the 12 week period provided for under the FMLA. This 12 week period applies whether or not the employer notifies the employee after leave begins that the leave is being taken under the FMLA.[33] Therefore, even if Plaintiff was entitled to leave under the FMLA she exhausted her rights with the leave she had taken prior to November 30th.

Accordingly, the Plaintiff was not an eligible employee and even, if so, exhausted her twelve week leave period under the FMLA before November 30, 1998. Thus, to the extent Plaintiff claims an interference violation for failing to provide her benefits under the FMLA, Defendant's motion for summary judgment is due to be granted.

### B. *Retaliation Under the FMLA*

Plaintiff also argues that even if she was not eligible for benefits under the FMLA she still has, nonetheless, alleged a viable claim for retaliation under the FMLA. Further Plaintiff argues that on this claim there are material issues of fact sufficient to preclude entry of summary final judgment.

Relying exclusively on the words "attempt to exercise" in the statutory lan-

---

**31.** *O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1353–54 (11th Cir.2000).

**32.** 29 U.S.C. § 2611(2).

**33.** *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1308 (11th Cir.1999) (an employee is not entitled to more than twelve weeks leave under the FMLA regardless of the employer's failure to provide notice).

guage in 29 U.S.C. § 2615(a)(1),[34] Plaintiff argues that "[T]erminating Plaintiff because she requested FMLA leave, regardless of whether or not she was actually eligible for the leave, is clearly a violation of the Act." [35]

Defendant, on the other hand, argues that as a matter of law an employee cannot sue for retaliation under the FMLA where he or she was not covered under the Act in the first instance. Therefore, the Court must determine whether a claim for retaliation may be asserted where the plaintiff was not eligible for benefits under the FMLA in the first place.

▮ In order to state a claim for retaliation under the FMLA, an employee must allege and prove that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment decision, and (3) the decision was causally related to the protected activity.[36]

▮ There is no dispute that Plaintiff can establish the second element—i.e. an adverse employment decision. Although there may be a factual dispute on the record as to causation concerning whether the decision to terminate Plaintiff was made before the November 30th telephone conversation, during the November 30th telephone conversation or after the written FMLA request was faxed to Defendant on December 1, 1998, the Court does not need to resolve this issue because the Plaintiff

cannot establish, the first element of a *prima facie* case, that she was retaliated against because she was engaging in a protected activity. On this issue there is no factual dispute that Plaintiff was not eligible for FMLA benefits because she did not work the requisite 1,250 hours in the twelve month period preceding her FMLA leave request. The issue to be determined is, therefore, whether the Plaintiff engaged in statutorily protected activity when she either orally requested FMLA leave during the telephone conversation of November 30th or when she made the written request for FMLA leave on December 1.[37]

Although the Eleventh Circuit has not squarely addressed this issue, the Eleventh Circuit suggested in *Cash v. Smith*[38] that an employer cannot be liable for retaliation under the FMLA where the employer terminates an employee who is not entitled to benefits under the FMLA.

In *Cash* an employee sued her employer, *inter alia*, for retaliation under the FMLA alleging that her employer removed her from a favorable position and refused to promote her to a more favorable position within the company after she had taken leave from work for medical reasons. In upholding the district court's grant of summary judgment in favor of the employer on the retaliation claim under the FMLA, the *Cash* court observed that "Cash [the plaintiff] has failed to present evidence that she exercised a protected right under the

---

34. Section 2615 of the FMLA states: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the **attempt to exercise,** any right provided under this subchapter."

35. Doc. 47, at 7.

36. *Strickland,* 239 F.3d at 1207.

37. Although there is a factual dispute as to whether the Plaintiff orally requested FMLA leave on November 30th, for purposes of this

motion the Court will draw all reasonable inferences in the light most favorable to Plaintiff. The Court will, therefore, assume an oral request for FMLA leave was made on November 30th and that a verbal request for FMLA leave is sufficient. *See,* Department of Labor's comments regarding the Family And Medical Leave Act, 60 Federal Register 2180, January 6, 1995, § 825.303 (as amended on February 3, 1995 (60 FR 6658) and on March 30, 1995 (60 FR 6382)).

38. 231 F.3d 1301, 1307 (11th Cir.2000).

FMLA."[39] Because the medical leave the plaintiff took in *Cash* was not under the auspices of the FMLA the court concluded that Plaintiff did not satisfy the first element of a retaliation claim that she prove that she was "availing herself of a protected right."

This interpretation of retaliation claims under the FMLA has been followed by most courts that have confronted the issue. For example, in *Navarro–Pomares v. Pfizer*[40], a former employee brought an action against her employer for retaliation alleging that she was fired for exercising her rights under the FMLA. The plaintiff in *Navarro–Pomares* took a leave of absence to care for her pregnant daughter and her daughter's two children. Despite the fact that the employer expressly denied the request for leave the employee took the leave. The plaintiff was ordered to report to work and when she did not she was terminated. The district court granted summary judgment in favor of the employer holding that in view of the fact that the Plaintiff was not entitled to leave under the FMLA she was precluded from maintaining a cause of action for retaliation.[41]

Similarly, where an employee, as here, is not an "eligible employee" under the Act the district court in *Coleman v. Prudential Relocation* held that an employee's retaliation claim must fail because an ineligible employee cannot engage in protected activity.[42] In *Coleman* although the employee was covered under the Act when he was fired, he had not worked for the employer the required twelve months when he took leave to attend to his parents' needs. He contended that he was fired for taking this leave. The *Coleman* court concluded that the Plaintiff had failed to make out a *prima facie* case of retaliation under the FMLA because it was necessary to allege that the retaliation or firing had to have been as a result of the employee having engaged in protected activity.

It follows that if an employee fails to show that he was eligible under the FMLA he cannot show, as a matter of law, that he was engaging in protected activity. Thus, the act of firing or retaliation by the employer against the employee in that instance cannot be said to have been initiated because the employee was engaging in (or had engaged in) protected activity. This view is in accord with a host of cases by other district courts that have confronted the same or a similar issue under the FMLA.[43]

39. *Id.* at 1307.

40. 97 F.Supp.2d 208, 214 (D.P.R.2000), *reversed and remanded on other grounds,* 261 F.3d 90, 2001 WL 929885 (1st Cir.2001).

41. *Id.* at 214.

42. 975 F.Supp. 234, 245 (W.D.N.Y.1997)

43. *See, e.g. Cole v. Sisters of Charity Of The Incarnate Word,* 79 F.Supp.2d 668, 672 (E.D.Tex.1999) (Defendant cannot be held liable for retaliation under FMLA where plaintiff was not eligible for FMLA leave because she did not have serious health condition); *Rogers v. Bell Helicopter Textron Inc.,* 2000 WL 1175647 (N.D.Tex.2000) (retaliation claim failed because court found the plaintiff was not entitled to FMLA leave); *Briody v. American General Finance Co.,* 1999 WL 387269 (E.D.Pa.1999) (summary judgment granted on retaliation claim where plaintiff was not an eligible employee at the time she took leave); *Sewall v. Chicago Transit Authority,* 2001 WL 40802 (N.D.Ill.2001) ("Since Sewall's [plaintiff's] leave was not covered by the FMLA, the CTA [defendant] could not have retaliated against Sewall for taking FMLA leave."); *Wemmitt–Pauk v. Beech Mountain Club,* 140 F.Supp.2d 571, 581 (W.D.N.C.2001) (summary judgment granted because the "Plaintiff never engaged in a 'protected activity' under the FMLA; that is, she was not eligible for FMLA leave."); *Thoele v. United States Postal Service,* 996 F.Supp. 818, 821 n. 1 (N.D.Ill. 1998) ("Mr. Thoele [plaintiff] was not protected by the FMLA when his leave was taken. Accordingly he cannot make out a retaliation claim under the FMLA.").

Indeed, the only authority which provides any support for Plaintiff's position is a footnote in *Dormeyer v. Comerica Bank–Illinois*[44] in which the district court, there, stated that it did not agree with the other district courts in the Northern District of Illinois concerning whether a plaintiff can state a retaliation claim where the plaintiff mistakenly believes she is eligible for FMLA leave. This comment by the court in *Dormeyer* is of limited value, however, in view of the fact that the court did not provide any analysis for its position and at the same time acknowledged that at least three other district courts in the Northern District of Illinois previously had held otherwise. Notably, the *Dormeyer* court, nonetheless, entered summary judgment in favor of the employer on the retaliation claim on other grounds and, thus, the comment in the footnote is at best *obiter dicta* and of little precedential value.

Most of the cases addressing this issue have involved a termination after an employee took leave, which subsequently was determined not to have been permitted under the FMLA either because the employee had not been employed long enough or because the reason for the leave did not meet the requirements of the Act. Where, as here, the employee is not eligible for any benefits under the Act because she has not satisfied the threshold eligibility requirements of working the required number of hours, the rationale for concluding that a *prima facie* case has not been made out is even more compelling. To follow Plaintiff's theory of retaliation claims under the FMLA to its logical extreme would produce absurd results. If employees could bring retaliation claims under the FMLA without meeting the threshold eligibility requirements an employee could work a minimal number of hours, randomly take leave to suit his or her own purposes, and simply advise the employer that he was taking leave under the FMLA, even though he was not entitled to leave under the Act. If the employer eventually fired the employee for taking leave the employee could then simply file suit and allege that the firing was in retaliation for the employee exercising his or her rights under the FMLA. Plaintiff's view of a *prima facie* claim for retaliation under the FMLA would produce such a result.

■ The Court, therefore, concludes that in order to state a *prima facie* claim for retaliation under the FMLA the plaintiff must establish that the conduct he has engaged in—which is the precipitating cause for the retaliation or termination of employment—be a protected activity, which means that the leave he has taken, or requests to take, must be leave that he is eligible for and is entitled to take under the Act. Where the employee takes leave, or requests to take leave, that he is not eligible for, as here, the employee cannot be deemed to have engaged in protected activity and, therefore, termination by the employer in such a circumstance cannot be grounds to support a retaliation claim under the FMLA.

Because the Plaintiff, here, has not, and cannot, establish that she was eligible for leave under the FMLA on or before November 30, 1998 she has failed to establish a claim for retaliation under the FMLA. Accordingly, the Defendant's Motion For Summary Final Judgment on Count I of the Amended Complaint is due to be **GRANTED.**

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion For Summary Judgment (Doc. 34) is hereby **GRANTED** and the Clerk is directed to enter a separate judgment in

44. 1998 WL 729591 *6 n. 5 (N.D.Ill.).

favor of Defendant as to Counts I and II of the Amended Complaint and close the case in this matter. As to Count III of the Amended Complaint, which alleges a claim for violation of state law only, the Court declines to exercise supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(c) and, therefore, Count III is dismissed without prejudice to Plaintiff's right to pursue this claim in the appropriate state forum and subject to the tolling provisions provided in 28 U.S.C. § 1367(d).