Stephen H. PASHOIAN, Plaintiff,

v.

GTE DIRECTORIES n/k/a Verizon Directories, Defendant.

No. 8:00CIV2072T17EAJ.

United States District Court,
M.D. Florida,
Tampa Division.

June 24, 2002.

No. 22); Defendant's Motion to Strike and Memorandum of Law in support thereof (Dkt. No. 19); Deposition of Stephen H. Pashoian (Dkt. No. 12); Affidavit of Steven H. Pashoian (Dkt. No. 16); Deposition of Dan Stewart (Dkt. No. 17); Defendant's Motion for Summary Judgment and Memorandum of Law in support thereof (Docket No. 11); and Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 16).

### Factual Background

This action involves a suit by Plaintiff Stephen H. Pashoian, a former employee of the Defendant Verizon Directories ("Verizon"). Plaintiff's complaint consists of five Counts and includes: (1) a violation of the Family Medical Leave Act, Title 29, United States Code, Section 2615, (FMLA); (2) a gender discrimination claim under Title VII of the Civil Rights Act of 1964, as amended; (3) a gender discrimination claim under the Florida Civil Rights Act of 1992; (4) a retaliation claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e–3(a); and (5) a retaliation claim under the Florida Civil Rights Act of 1992, Florida Statutes, Section 760.10(7). The following factual allegations are taken from the depositions, exhibits, and affidavits in the record.

Verizon Directories publishes various regional telephone directories, in which it sells advertising space to businesses. Plaintiff, Stephen H. Pashoian (Plaintiff), was employed from January of 1996, until June 18, 1999, as a sales representative of the Defendant telephone company Verizon. Plaintiff worked in St. Petersburg, Florida and sold telephone directory advertising. Plaintiff began his career with Verizon selling small accounts in its Telephone Services division. In November 1996, Plain-

J. Robert McCormack, Persante & McCormack, P.A., Clearwater, FL, for Stephen H. Pashoian, plaintiff.

Gregory Alan Hearing, Thomas M. Gonzalez, Richard L. Bradford, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for GTE Directories Corp nka Verizon Directories Corp., defendant.

### ORDER

KOVACHEVICH, Chief Judge.

THIS CAUSE is before the Court on Defendant GTE Directories, n/k/a Verizon Directories Amended Motion to Strike and Memorandum of Law in support thereof (Dkt. No. 21); Plaintiff's Response to Defendant's Amended Motion to Strike (Dkt.

tiff was promoted to Telephone Sales, a division handling larger dollar customers, whereupon he began working under District Sales Manager Jo Horrell. Horrell's immediate supervisor was Lisa Capco, the Telephone Sales Division Manager.

Verizon sales representatives are assigned specific territories and given a listing of existing, former, and potential accounts to solicit. It is a violation of Verizon's sales policy for any sales representative to sell to another representative's prospect or account. However, shortly before or after the close of scheduled advertising deadline dates, known as "open market" periods, sales representatives are permitted to call on accounts assigned to their peers, unless the prospect states that he or she is working with another representative. Furthermore, Verizon manages and maintains post-sale customer complaints, as well as violations of company policy, on each of its sales representatives. A post-sale customer complaint results in the issuance of an internal form, an "S3006," and an investigation by the company's Customer Service Department to determine whether the complaint was justified. Sales representative's annual confirmed S3006 forms may not exceed 0.5% of revenue handled or discipline will result.

Plaintiff was a successful sales representative during the course of his employment. He regularly exceeded budgeted sales quotas, received numerous sales awards, and won a vacation through Verizon's sales incentive program. During this time, Plaintiff also received disciplinary warnings, and his percentage of S3006's fluctuated between acceptable and unacceptable company standards. Specifically, on June 3, 1997, Plaintiff received a "Coaching Report" because of a S3006 cus-

tomer complaint; on June 18, 1997, Plaintiff received a "Written Warning" regarding his accumulation of S3600 customer complaints; on November 28, 1997, Plaintiff received another "Coaching Report" because of customer complaints; on January 19, 1998, Plaintiff received a written "Final Warning" regarding his conduct; on February 12, 1998, Plaintiff received a "Verbal Warning" for misrepresentation; and on May 4, 1999, Plaintiff received a "Final Warning Extension" for repeatedly violating company policy. Plaintiff's final disciplinary status extended more than eighteen months into 1999 when Stacy Karas succeeded Horrell as Plaintiff's District Sales Manager.

In February 1998, and throughout the remainder of his employment, Plaintiff sought transfer to the Premise Sales division. Premise representatives solicit Verizon's largest accounts, earn higher commissions, and receive use of a company car. However, Verizon's policy dictates that employees currently on disciplinary action are ineligible for transfer. As a result of Plaintiff's disciplinary status, Verizon management did not support his transfer. In response, Plaintiff voiced his concern to Verizon management that the company's procedures and promotional criteria were being enforced in a gender-biased fashion.

On May 6, 1999, Plaintiff submitted an application for FMLA leave to Ms. Karas. The FMLA request was forwarded to CORE, Defendant's corporate benefits vendor responsible for managing Verizon's employee leave requests. On May 27, 1999, CORE denied Plaintiff's FMLA request due to insufficient information. Plaintiff contacted CORE and was told to submit a new application. However, during this time, mid-June of 1999, Verizon

Division Manager, Barbara Bullard–King, terminated Plaintiff's employment for violating the company's "open market" policy.

On October 10, 2001, Plaintiff filed the present suit in this Court. Two motions are before the Court. The first motion is Defendant Verizon's Motion to Strike portions of Plaintiff's affidavits. The second motion is Defendant's Motion for Summary Judgment on all counts. Each Motion will be addressed in turn.

## Motion to Strike

### Standard of Review

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter" upon motion by any party. Fed.R.Civ.P. 12(f). A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Story v. Sunshine Foliage World, Inc.,* 120 F.Supp.2d 1027, 1030 (M.D.Fla.2000) (quoting *Seibel v. Society Lease, Inc.,* 969 F.Supp. 713, 715 (M.D.Fla. 1997)).

 An affidavit submitted in connection with a summary judgment motion is subject to a motion to strike if it does not meet the standards set forth under Rule 56(e) of the Federal Rules of Civil Procedure. *Id.* (citing *Barnebey v. E.F. Hutton & Co.,* 715 F.Supp. 1512 (M.D.Fla.1989)). Rule 56(e) provides that an affidavit "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." Fed.R.Civ.P. 56(e). As such, an affidavit must be stricken when it is a conclusory argument, rather than a statement of fact, or when the affidavit is not based on personal knowledge. *Story,* 120 F.Supp.2d at 1030. Moreover, because affidavits must be based on personal knowledge, an affidavit based on nothing more than "information and belief" is not sufficient as a matter of law and is subject to a motion to strike. *Id.* (citing *Barnebey,* 715 F.Supp. at 1512). Finally, because the court may only consider evidence that would be admissible at trial, the court may not consider inadmissible hearsay when deciding a motion for summary judgment, and the court may strike the inadmissible portions of the affidavit and consider the rest. *Id.*

### Discussion

Defendant claims that Plaintiff has submitted affidavits that contain statements that are contradictory, are not within the affiants' personal knowledge, and are inadmissible hearsay evidence. Therefore, Defendant requests the Court to strike portions of the affidavit of Steven Pashoian.

### A. Exhibit K of Pashoian's Affidavit

Defendant moves to strike Exhibit K of Steven Pashoian's affidavit on the grounds that the attached letter is hearsay. The letter reads as follows:

**TO WHOM IT MAY CONCERN:**

At the time I agreed to advertise with GTE's representative, Steve Pashoian, I had no previous commitments or arrangements regarding GTE advertising. I did however meet with another GTE rep., in Tampa, who gave me some ideas, but all of which were out of Computer Direct's budget. If I were not contacted and given a fresh perspective by Steve, I would not have advertised with GTE at all.

Sincerely,

G. Compton

Computer [sic] Direct, Inc.

Federal Rule of Evidence 801 defines hearsay as "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801. Two elements must be present before an out-of-court statement will be rendered inadmissible as hearsay: 1) the out-of-court statement must be a verbal assertion or conduct intended as an assertion; and 2) the statement must be offered to prove the truth of the matter that it asserts. *U.S. v. Cruz*, 805 F.2d 1464, 1477–1478 (11th Cir.1986) (citations omitted).

The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir.1999). However, if hearsay evidence can be "reduced to admissible form" at trial, it may be considered. *Id.* at 1323. Furthermore, "even though a document, deponent, or affiant references hearsay information, that information may be considered on summary judgment if it would be admissible at trial under an exception to the hearsay rule or as non-hearsay." *Hughes v. Amerada Hess Corp.*, 187 F.R.D. 682, 688 (M.D.Fla.1999).

■ After reviewing the affidavits that Plaintiff submitted, Defendant's Motion to Strike, and Plaintiff's answer, the Court finds that Exhibit K of Plaintiff's affidavit is inadmissible hearsay. Plaintiff is offering Exhibit K to prove the truth of the matter asserted, that he did not violate "open market" policy. Furthermore, Plaintiff has failed to show the Exhibit's admissibility. Thus, "absent a showing of admissibility ... [a party] may not rely on rank hearsay ... to oppose proper motions for summary judgment." *Bush v. Barnett Bank of Pinellas County*, 916 F.Supp. 1244, 1256 (M.D.Fla.1996). Therefore, the Court finds that the Motion to Strike portions of affidavits for containing inadmissable hearsay must be granted.

**B. Pashoian Affidavit Statements**

Defendant moves to strike portions of Plaintiff's affidavits on the grounds that his statements therein contradict prior deposition testimony regarding supervisory approval of Defendant's transfer policy, alleged prejudicial statements of Lisa Capco, and Plaintiff's receipt of "counseling" after the issuance of his Final Warning from Defendant.

■ A party "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion, that, by omission or addition, contradicts the affiant's previous deposition testimony." *Van T. Junkins & Assoc. v. U.S. Indus. Inc.*, 736 F.2d 656, 657 (11th Cir.1984). Furthermore, sham affidavits should be disregarded. Thus, " 'when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact ... [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, the previously given clear testimony, the affidavit should be stricken.' " *Tippens v. Celotex Corp.*, 805 F.2d 949, 954 (11th Cir.1986) (quoting *Van T. Junkins & Assoc.*, 736 F.2d at 657 (11th Cir.1984)). However, "an affidavit may be considered if a reasonable explanation is given for the inconsistency." *Grice v. Air Prods. & Chems., Inc.*, 2000 WL 353010, 2000 U.S. Dist. LEXIS 5621 (N.D.Fla.2000). Thus, if the

affidavit supplements earlier testimony, presents a variation of testimony, or represents instances of failed memory, the inconsistencies should not be stricken. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir.1987).

Defendant first asserts that Plaintiff's affidavits contradict his prior deposition testimony concerning Defendant's transfer policy. Specifically, Plaintiff was asked what his understanding of Defendant's transfer policy was when an employee was on corrective counseling. During Plaintiff's deposition, he testified that, "if the hiring manager wanted you—you know, ... he could take you." (Pashoian Depo. p. 121). Plaintiff later submitted an affidavit (regarding Defendant's transfer policy) in which he stated, "I was advised that supervisory approval was required for a transfer." (Pashoian Aff. ¶ 14). While taken out of context, interpretation of these statements may be prone to contradiction; however, reviewing the deposition testimony of Plaintiff together with his affidavits provides a reasonable explanation for the inconsistency, and, thus, Plaintiff's testimony is not "sham," but rather a "variation" in his testimony. Because the statement in the affidavit does not contradict the Plaintiff's prior testimony, the Defendant's Motion to Strike is denied as to this statement.

Defendant next asserts that Plaintiff's affidavits contradict prior deposition testimony regarding the alleged prejudicial statements that his Division Manager, Lisa Capco, made. Defendant points out that Plaintiff did not identify or submit any gender-biased statements in his deposition testimony or interrogatories; however, Plaintiff included nine alleged prejudicial statements in an affidavit submitted April 24, 2002. Furthermore, Defendant

makes note that two of the nine alleged statements that Plaintiff identified and attributed to Lisa Capco were previously associated with Jo Horrell and that these statements differed in wording.

When considering a Motion to Strike, the Eleventh Circuit has stated that,

> [t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was stating the truth.

*Tippens,* 805 F.2d at 953–54. As such, the Court finds that any inconsistencies between Plaintiff's deposition testimony and his affidavits are only a "failure of memory" and any discrepancies in the two documents can be brought out at trial and considered by the trier of fact. Because no inherent inconsistency exists, the Defendant's Motion to Strike is denied as to this statement.

Defendant also moves to strike Plaintiff's statements denying that he had received "corrective counseling" after Defendant placed him on Final Warning on the ground that Plaintiff's answers submitted in his affidavits contradict prior deposition testimony. Plaintiff states in his affidavit that, during the "Final Warning" period, he "had no monthly meetings ... and no follow-up counseling." (Pashoian Aff. ¶ 21). In his prior deposition testimony, Plaintiff stated that he "guessed" Defendant's Coaching Reports, issued in response to his conduct, could be construed as counseling. Further, when asked if these Coaching Reports were about "a documentation of date, time, and problem ... with the performance of an employee,"

Plaintiff responded, "I suppose so." (Pashoian Depo. p. 292).

The Court finds that Defendant's questions are ambiguous. Furthermore, Plaintiff's answers to Defendant's questions are not clear and his responses do not "negate the existence of any genuine issue of material fact." *Tippens*, 805 F.2d at 954 (quoting *U.S. Indus.*, 736 F.2d at 657). Plaintiff's deposition testimony is nothing more than mere guesswork, and, as such, does not present an inherent inconsistency or contradiction to justify this Court granting Defendant's Motion to Strike these statements. Thus, the Court finds that paragraph twenty-one will not be stricken from Pashoian's affidavit and Defendant's Motion as to this statement is denied.

## C. Referenced Deposition Testimony of Dan Stewart

Defendant moves to strike several statements in Steve Pashoian's affidavit that refer to the deposition testimony of Dan Stewart on the grounds that these statements are inadmissible lay opinions not within the personal knowledge of the affiant. These statements refer to the following:

(a) Affiant's understanding of Verizon promotional and transfer criteria. (Stewart Depo. p. 29)

(b) That during affiant's employment at Verizon, Jo Horrell and Stacy Karas did not meet the company's qualifications for promotion. (Stewart Depo. pp. 26–27).

(c) That affiant heard Lisa Capco make pro-female statements. (Stewart Depo. pp. 46–47).

Under the Federal Rules of Evidence, personal knowledge can be established by showing that the witness was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates. Fed.R.Evid. 602. The Court finds that Mr. Stewart, as an employee of Verizon and a co-worker of Horrell, Capco, and Karas, was in a position to "see, hear, or otherwise perceive" the statements contained in his affidavit and will not strike those portions of Pashoian's affidavit that refer to Stewart's testimony. Therefore, the Court finds that Plaintiff's Motion to Strike portions of Defendant's affidavits for referencing Dan Stewart's testimony will be denied.

## *Motion for Summary Judgment*

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(e). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). That burden can be discharged if the moving party can show the Court that there is "an absence of evidence to support the nonmoving party's case." *Id.* at 323, 325, 106 S.Ct. 2548. When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those that will affect the outcome of the trial under governing law. *Id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First Natl. Bank of Mt. Pleasant*, 595 F.2d 994, 996–997 (5th Cir.1979). Furthermore, the court may not weigh the credibility of the parties on summary judgment. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir.1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact. *Id.*

In the context of employment discrimination claims in which there is a lack of direct evidence, the United States Supreme Court explained in *McDonnell Douglas v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that the plaintiff carries the initial burden of proving a *prima facie* case. *See Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir.1988) (distinguishing between "direct evidence" case and *McDonnell Douglas* case). Upon the employer's showing of some legitimate, non-discriminatory reason for the termination, the plaintiff has the burden to prove that the employer's proffered reason is pretext. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. The Eleventh Circuit permits summary judgment for a defendant when the plaintiff fails to make a sufficient showing to rebut the defendant's proffered legitimate, non-discriminatory reason for the

challenged employment action. *See, e.g., Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596–97 (11th Cir.1987) (upholding summary judgment for employer on grounds that plaintiff failed to produce sufficient evidence of pretext); *Pugh v. Heinrich*, 695 F.Supp. 533 (M.D.Fla.1988) (granting summary judgment on plaintiff's disparate treatment and constructive discharge claims because the plaintiff failed to either establish *prima facie* case of discrimination or rebut employer's proffered reasons by competent evidence that reasons were pre-textual or unworthy of credence).

## Discussion

### I. Violation of FMLA

Although different types of claims are not clearly delineated in the actual language in the FMLA, the Eleventh Circuit, as well as other courts, have held that the FMLA creates two distinct types of claims: (1) interference claims under 29 U.S.C. § 2615(a)(1), in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the FMLA, and (2) retaliation claims under 29 U.S.C. § 2615(a)(2), in which an employee asserts that his employer discriminated against him because he engaged in activity protected under the FMLA. *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206–07 (11th Cir.2001). In the present case, Plaintiff is bringing both claims.

### A. Interference

Plaintiff asserts a FMLA interference claim under 29 U.S.C. § 2615(a)(1), alleging that Defendant denied him rights guaranteed by the FMLA. To state a claim for interference with a substantive right,

an employee need only demonstrate, by a preponderance of the evidence, that he or she was entitled to the benefit denied. *O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353–54 (11th Cir. 2000). Furthermore, the FMLA does not permit employers to deny a request for leave, provided the employee provides sufficient information. *Id* at 1354.

Leave taken in relation to a serious health condition "may be taken intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1). An employer may require employees seeking FMLA leave to provide certification issued by the health care provider of the employee or family member who suffers from the serious health condition. 29 U.S.C. § 2613(a). However, the FMLA limits the information an employer may request by providing that a certification "shall be sufficient" if it states:

(1) the date on which the serious health condition commenced;

(2) the probable duration of the condition;

(3) the appropriate medical facts . . . regarding the condition;

(4) . . . a statement that the employee is unable to perform the functions of the position.

29 U.S.C. § 2613(b).

Included in Defendant's FMLA form is a request for certain information when an employee seeks leave to care for a family member with a serious health condition. Specifically, Defendant's FMLA form requests a description of the care to be provided. Plaintiff's FMLA application of May 6, 1999 provided information on the commencement and duration of his leave and described the extent of care that he would provide to his wife. Plaintiff submitted the following reasons for applying for FMLA leave: "prenatal care (safety, transportation, basic care) & postnatal care due to incapacity. Care for newborn." (Defendant Ex. 40). Subsequently, CORE, Defendant's corporate benefits vendor, denied Plaintiff's FMLA request, citing insufficient information "to approve full-time FMLA" leave. (Defendant Ex. 41).

Plaintiff alleges that Defendant violated the FMLA by interfering with his rights under the Act when CORE denied his leave request. Defendant asserts that CORE was justified in denying the request because the information Plaintiff submitted in his FMLA application was insufficient. Furthermore, Defendant cites 29 C.F.R. § 825.306(a)(5)(i) of the FMLA to advance its position. Pertinent parts of § 825.306(a)(5)(i) reads as follows:

> If leave is required to care for a family member of the employee with a serious health condition, whether the patient requires assistance for basic medical or personal needs or safety, or for transportation; . . . the employee is required to indicate on the form the care he or she will provide and an estimate of the time period.

█ Defendant's Motion for Summary Judgment and its Memorandum of Law in support thereof neither set forth the alleged insufficiencies of Plaintiff's FMLA request, nor provide any case support or other authority for its position. Defendant merely asserts that Plaintiff's leave request "failed to provide sufficient medical certification." This makes it difficult, if not impossible, for the Court to consider Defendant's argument that Plaintiff was not entitled to FMLA leave. Viewing the record in a light most favorable to the

Plaintiff, as the Court is required to do on summary judgment, Plaintiff's proffered reasons, safety, transportation, and basic care, together with the signature of Plaintiff's health care provider, Dr. Patricia St. John, present a genuine issue of material fact as to whether Plaintiff's FMLA leave request form was sufficiently certified. Because the determination of whether Defendant interfered with Plaintiff's FMLA rights rests on competing facts, Defendant's Motion for Summary Judgment as to Plaintiff's interference claim in Count I must be denied.

## B. Retaliation

### (a) FMLA

Plaintiff asserts a FMLA retaliation claim under 29 U.S.C. § 2615(a)(2), alleging that Defendant terminated Plaintiff because he requested leave pursuant to the FMLA. A plaintiff proceeding under 29 U.S.C. § 2615(a)(2) must prove that the employer acted with the requisite retaliatory intent. This intent may be proven through either direct or circumstantial evidence. Because Plaintiff has not presented any direct evidence of retaliatory intent, the Court must analyze the circumstantial evidence of this case under the specialized burden-shifting analysis delineated in *McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817. *Brungart v. Bell-South Telecommunications, Inc.*, 231 F.3d 791 (11th Cir.2000).

### I. Plaintiff's *Prima Facie* Case

To establish a *prima facie* case of retaliation under the *McDonnell Douglas* framework, Plaintiff must prove that: (1) he engaged in a statutorily-protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity. *Strickland*, 239 F.3d at 1207.

### 1. Protected Activity

To establish statutorily-protected activity under the FMLA, Plaintiff must show that he engaged in conduct "which is the precipitating cause for the retaliation or termination of employment." *Morehardt v. Spirit Airlines, Inc.*, 174 F.Supp.2d 1272, 1281 (M.D.Fla.2001). Thus, a plaintiff's leave "that he has taken, or requests to take, must be leave that he is eligible for and is entitled to take under the Act." *Id.* Conversely, "where the employee takes leave, or requests to take leave, that he is not eligible for, . . ., the employee cannot be deemed to have engaged in protected activity and, therefore, termination by the employer in such a circumstance cannot be grounds to support a retaliation claim under the FMLA." *Id.* Because the Court has already determined that Plaintiff was eligible for FMLA leave, he has established the first element of a *prima facie* case for retaliation under the FMLA.

### 2. Adverse Employment Action

An adverse employment action is "an ultimate employment decision, such as a discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir.2000) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997)). To determine whether there is sufficient action to constitute adverse employment action, the court must look at each claim on a case-by-case basis, using a subjective and an objective stan-

dard. *Id.* (citing *Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1178 (10th Cir. 1999)). "In this Circuit, an employee must show a serious and material change in the terms, conditions, or privileges of employment, and the employee's subjective view of the significance of the employer's action is not controlling; rather, the employment action must be materially adverse to a reasonable person under the circumstances." *Davis v. Town of Lake Park,* 245 F.3d 1232, 1239 (11th Cir.2001) (citing *Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1453 (11th Cir.1998)).

Plaintiff asserts that Defendant terminated him in retaliation for filing a FMLA leave request. The Court finds that termination of employment is an "ultimate employment decision" constituting a "serious and material change in the terms" of Plaintiff's employment. *Mistretta v. Volusia County Dept. of Corrections,* 61 F.Supp.2d 1255, 1261 (M.D.Fla.1999). Thus, Plaintiff's termination is sufficient to establish an adverse employment action for the purposes of establishing the second element of his *prima facie* case for retaliation under the FMLA.

### 3. Causal Connection

To establish a causal connection between Plaintiff's participation in a protected activity and Defendant's adverse employment action, Plaintiff must show that the "decision-maker[s] [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *Gupta,* 212 F.3d at 578 (quoting *Farley,* 197 F.3d at 1337 (citation, internal marks, and emphasis omitted)). For the purposes of a *prima facie* case, "close temporal proximity" may be sufficient to show that the protected activity and the adverse action were not "wholly

unrelated." *Id.* (citing *Farley,* 197 F.3d at 1337).

■ Plaintiff has presented sufficient evidence to show that the decision-makers were aware that he filed a FMLA leave request through Defendant's Corporate Benefits Center. However, Plaintiff cannot establish a causal connection between the protected activity and the alleged adverse employment decision. Here, Plaintiff was terminated roughly six weeks after he filed a FMLA leave request. Defendant alleges that Plaintiff was terminated, not because he filed for FMLA leave, but because of his repeated history of violating company policy. It is undisputed that Plaintiff had a history of violating company policy severe enough to warrant Plaintiff's supervisors placing him on "warning" and "corrective counseling" throughout his employment. Furthermore, Defendant placed Plaintiff on corrective action more than two years before he requested FMLA leave.

Moreover, long before Plaintiff "engaged in statutorily-protected activity," Verizon management gave him adequate notice of the severity of his conduct and warned him of possible termination. Specifically, Horrell issued numerous internal warnings to Plaintiff regarding his conduct: on June 3, 1997, Plaintiff received a "Coaching Report" because of a S3006 customer complaint; on June 18, 1997, Plaintiff received a "Written Warning" regarding his accumulation of S3600 customer complaints; on November 28, 1997, Plaintiff received another "Coaching Report" because of customer complaints; on January 19, 1998, Plaintiff received a written "Final Warning" regarding his conduct; on February 12, 1998, Plaintiff received a "Verbal Warning" for misrepresentation; and on May 4, 1999, Plaintiff's supervisors issued

a "Final Warning Extension" for repeatedly violating company policy. Plaintiff's final disciplinary status extended more than eighteen months into 1999 when Barbara Bullard–King terminated his employment. Therefore, Plaintiff's allegation of causation—that he was terminated because he filed a FMLA leave request—is undermined by the undisputed fact that Verizon's steps toward Plaintiff's termination were already underway before he filed for FMLA leave. *See Beno v. United Telephone Co.*, 969 F.Supp. 723 (M.D.Fla.1997) (citing *Tuberville v. Personal Finance Corp.*, 1996 WL 407571, 1996 U.S. Dist. LEXIS 16755 (N.D.Miss.1996)) (finding plaintiff failed to put forth *prima facie* case of FMLA violation when "wheels of termination were put in motion before request for leave"). Thus, the Court finds that there was not a causal connection between Plaintiff's protected activity and the adverse employment action, and Plaintiff has not established a *prima facie* case of retaliation. Accordingly, Defendant Verizon's Motion for Summary Judgment as to Plaintiff's retaliation claim in Count I must be granted.

**(b.) Title VII**

■ To establish a *prima facie* case of retaliation under Title VII, the plaintiff must prove that: (1) he participated in an activity that Title VII protects; (2) he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. *Gupta*, 212 F.3d at 587 (citing *Farley*, 197 F.3d at 1336).

**1. Protected Activity**

Statutorily-protected activity includes filing complaints with the EEOC and complaining to superiors about sexual harassment. *Johnson v. Booker T. Washington Broad. Serv.*, 234 F.3d 501, 507 (11th Cir. 2000). Plaintiff engaged in statutorily-protected activity by filing a written complaint with Defendant and complaining to his Human Resource Manager, Jody Beattie, about Defendant's alleged gender discrimination. *See Meeks v. Computer Assocs. Intl.*, 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Com.*, 872 F.2d 1491, 1494 (11th Cir.1989)) ("To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to her protest,' so long as she had a reasonable good faith belief that the discrimination existed.' "). Thus, Plaintiff can meet the first element of his *prima facie* case for retaliation under Title VII.

**2. Adverse Employment Action**

Plaintiff asserts that Defendant terminated him in retaliation for filing a gender discrimination complaint. For the reasons stated previously, the Court finds that termination of employment is an ultimate employment decision constituting a serious and material change in the terms of Plaintiff's employment and, thus, is an adverse employment action for the purposes of establishing the second element of Plaintiff's *prima facie* case for retaliation under Title VII.

**3. Causal Connection**

To establish a causal connection between Plaintiff's participation in a protected activity and Defendant's adverse employment action, Plaintiff must show that the "decision-maker[s] [were] aware of the protected conduct," and "that the protected activity and the adverse action were not wholly unrelated." *Gupta*, 212 F.3d at 578

(quoting *Farley,* 197 F.3d at 1337 (citation, internal marks, and emphasis omitted)). For the purposes of a *prima facie* case, "close temporal proximity" may be sufficient to show that the protected activity and the adverse action were not "wholly unrelated." *Id.* (citing *Farley,* 197 F.3d at 1337).

■ Plaintiff has presented sufficient evidence to show that Defendant was aware he filed a gender discrimination complaint with the Human Resources department. However, Plaintiff cannot establish a causal connection between the protected activity and his termination. Here, Plaintiff was terminated more than twelve months after he complained of gender discrimination. Defendant alleges that Plaintiff was terminated, not because he filed a complaint with Human Resources, but because of his repeated history of violating company policy. It is undisputed that Plaintiff had a history of violating company policy. Furthermore, Plaintiff had adequate notice of the severity of his conduct and that further instances of such conduct would result in termination. Therefore, Plaintiff's allegation of causation—that he was terminated because he filed a gender discrimination complaint—is undermined by the undisputed fact that Verizon's steps toward Plaintiff's termination were already underway before he filed the complaint. *See Beno,* 969 F.Supp. 723 (citing *Tuberville,* 1996 WL 407571, 1996 U.S. Dist. LEXIS 16755). Thus, the Court finds that there was not a causal connection between Plaintiff's protected activity and the adverse employment action, and Plaintiff has not established a *prima facie* case of retaliation. Accordingly, Defendant Verizon's Motion for Summary Judgment as to Count IV must be granted.

## II. Gender Discrimination

### A. Title VII

Defendant claims that summary judgment is warranted because Plaintiff has failed to establish a *prima facie* case of gender discrimination under Title VII. Moreover, Defendant asserts that, even if Plaintiff could establish a *prima facie* case, he has not rebutted Defendant's legitimate, nondiscriminatory reason for failing to promote him. In response, Plaintiff argues that genuine issues of material fact exist concerning the establishment of the *prima facie* case and that he has set forth evidence indicating that, because of his gender, he was not promoted.

The Eleventh Circuit recognizes three (3) manners in which a plaintiff can satisfy the burden of proof under Title VII: direct evidence of intentional discrimination; statistical evidence of discrimination; or through circumstantial evidence of discrimination. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989).

#### 1. Statistical Evidence

In the present case, Plaintiff has not presented any statistical evidence to support his claim. Accordingly, the case must be analyzed under either direct or circumstantial evidence.

#### 2. Direct Evidence

In his complaint, Plaintiff alleges several instances of comments and attitudes reflecting gender bias by his supervisors. Specifically, Plaintiff alleges that Verizon Telephone Sales Division Manager, Ms. Lisa Capco, made the following statements to him:

(a) Men are idiots.

(b) It's not my fault you men are the ones doing stupid things.

(c) The women just handle accounts more appropriately.

(d) I can't help it if none of you men apply for promotion.

(e) I don't see why a man needs to be home for child birth anyway, it's not like you have anything to do with it.

(f) You cause me more grief than all the women in this Division combined.

(g) The women promoted were clearly more qualified.

(h) He needed to promote John Ripley—we needed the money. Besides, we had to get all you men to stop crying over an all female management team.

(i) He (John Ripley) is our token male, he doesn't have a speaking role.

■ In reviewing the record to make a determination on a motion for summary judgment, though these comments are uncorroborated by any other person, this Court must give Plaintiff the benefit of the inferences and assume that the previously listed comments were made as alleged. However, these statements, even if deemed discriminatory, do not constitute direct proof sufficient to establish, by a preponderance of the evidence, that Plaintiff was denied promotional opportunities because of his gender. "Only the most blatant remarks whose intent could be nothing other than to discriminate constitute direct evidence." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir. 1993). As such, these statements constitute only indirect evidence of a discriminatory attitude. *See Nixon v. Runyon*, 856 F.Supp. 977, 983 (E.D.Pa.1994). Accordingly, because Plaintiff has failed to present direct evidence of discriminatory animus, the *McDonnell Douglas* framework is the appropriate mode of analysis.

### 3. McDonnell Douglas Test

Under *McDonnell Douglas*, the plaintiff bears the burden of establishing a *prima facie* case of sex discrimination, which raises a rebuttable presumption of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Defendant must rebut the presumption by articulating legitimate, non-discriminatory reasons for its alleged discriminatory employment decisions. The defendant is only required to produce a nondiscriminatory reason for the alleged discriminatory actions. *Id.* Defendant is not required to bear the burden of proof. *Id.* Thus, the burden of production that shifts to the defendant, once a plaintiff has established a *prima facie* case of discrimination, is "exceedingly light" and easily established. *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983). Once defendant meets this burden, plaintiff must prove, by a preponderance of the evidence, that defendant's articulated reason for its decision is mere pretext for unlawful discrimination. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 at 256, 101 S.Ct. 1089, 67 L.Ed.2d 207.

### (I.) Plaintiff's *Prima Facie* Case

■ To prove a *prima facie* case of gender discrimination in a promotional decision, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified and applied for the promotion; (3) he was rejected despite these qualifications; and (4) other equally or less qualified employees who are not members of the protected class were promoted. *Wu v. Thomas*, 847 F.2d 1480, 1483 (11th Cir. 1988). However, when considering a motion for summary judgment; it is not enough, in and of itself, that the plaintiff has established a *prima facie* case of dis-

crimination. *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 594 (11th Cir.1987). "The ultimate question in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Id.* at 595 (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir.1984)). Therefore, the plaintiff is required to do more than show proof of a *prima facie* case to avoid summary judgment. *Id.*

Defendant does not dispute that Plaintiff was a member of a protected class or that he was not promoted; thus, to prove his *prima facie* case, Plaintiff must produce evidence that he was qualified for the promotion and that similarly-situated female employees were treated differently, absent any adequate nondiscriminatory explanation for the disparate treatment. *E.g., Bryant v. Int'l Schools Services, Inc.*, 675 F.2d 562, 575 (3d Cir.1982).

█ Defendant argues that Plaintiff's negative employment history precludes him from establishing that he was qualified to be transferred or promoted. Indeed, the evidence is undisputed that Plaintiff had a history of violating company policy. However, Plaintiff asserts that his receipt of company sales awards, winning a trip to Tahiti, as well as receiving words of praise concerning his sales performance demonstrate that he was qualified for a promotion. Furthermore, Plaintiff argues that Defendant's promotional criteria is not dictated by conduct, but supervisory approval. (Pashoian Aff. ¶ 14). Because this Court is not to decide material issues of fact on summary judgment, all doubt as to Plaintiff's *prima facie* case must be resolved in favor of Plaintiff. *Hayden*, 595 F.2d at 996–997. As such, this Court will

assume that Plaintiff was qualified for a promotion according to Defendant's policies and that he has established this element of his *prima facie* case.

To prove the last element of his *prima facie* case of gender discrimination, Plaintiff must also establish that similarly-situated or less-qualified female employees were promoted or transferred. Plaintiff identified Jo Horrell and Lisa Capco as two female co-workers who received promotions. Furthermore, Plaintiff, through the deposition testimony of Dan Stewart, alleges that neither Horrell nor Capco were qualified for the promotion. The burden of establishing a *prima facie* case of discrimination is not onerous. *See Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981). Therefore, affording Plaintiff all reasonable inferences, this Court finds that for purposes of this Order, he has met the burden of presenting a *prima facie* case of discrimination.

(II.) Defendant's Legitimate, Nondiscriminatory Reason

Under the burden-shifting analysis of *McDonnell Douglas*, the burden of production shifts to Defendant to offer a legitimate, nondiscriminatory reason for failing to promote Plaintiff. *Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993). Defendant must "clearly articulate in a reasonably specific manner a legitimate, nondiscriminatory reason" for the adverse action. *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Defendant's burden is one of production, not persuasion. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.1997). To satisfy its burden, Defendant must "clearly set forth, through ... admissible evidence, reasons for its actions which, if believed by the trier of

fact, would support a finding that unlawful discrimination was not the cause of the employment decision". *Hicks,* 113 S.Ct. at 2746.

Defendant argues that it did not promote Plaintiff because of his poor performance and repeated violations of Verizon policy. Based on the exhibits and affidavits Defendant submitted in support of its Motion, the Court concludes that Defendant has proffered a legitimate, nondiscriminatory reason for failing to promote Plaintiff.

### (III.) Whether Defendant's Proffered Reason is a Pretext for Discrimination

Once the defendant articulates legitimate, nondiscriminatory reasons for its actions, " 'the presumption created by plaintiff's *prima facie* case drops from the picture' and 'the factual inquiry proceeds to a new level of specificity.' " *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. 1089). "The plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.*

 As evidence of pretext, Plaintiff calls the Court's attention to the promotions of Jo Horrell and Lisa Capco. Assuming arguendo, that these female co-workers were equally or less qualified, as Plaintiff alleges, he undermines his own argument. Plaintiff admits that his supervisors, Horrell and Capco, who were responsible for recommending him for promotion, promoted both men and women within the company (Pashoian Depo. pp. 125–26, 177–78, 181–82, 194–96, 200–01), and that Capco had promoted Plaintiff in the past (Pashoian Depo. p. 199). Furthermore, Plaintiff admits that both men and women supervisors denied him promotional advancement. (Pashoian Depo. p. 203). Thus, Plaintiff cannot show that Defendant's employment decisions were motivated by sex. *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir.2000). Because courts "are not in the business of adjudging whether employment decisions are prudent or fair," but "whether unlawful discriminatory animus motivates a challenged employment decision," this Court finds that Defendant Verizon did not treat men and women differently within the company. *Damon v. Fleming Supermarkets,* 196 F.3d 1354, 1361 (11th Cir.1999). Accordingly, Plaintiff has not presented sufficient evidence for a reasonable jury to conclude that Defendant's stated reasons for failing to promote him were merely a pretext for gender discrimination, and Defendant's Motion for Summary Judgment as to Count II must be granted.

### B. Florida Civil Rights Act

Florida courts have held that decisions construing Title VII are applicable when considering the Florida Civil Rights Act because the Act was patterned after Title VII. *Harper v. Blockbuster Entertainment,* 139 F.3d 1385, 1387 (11th Cir.1998) (citing *Ranger Ins. Co. v. Bal Harbour Club, Inc.,* 549 So.2d 1005, 1009 (Fla. 1989)). "No Florida court has interpreted the [Florida Civil Rights Act] to impose substantive liability where Title VII does not." *Id.* Therefore, for the same reasons that Plaintiff's gender discrimination and retaliation claims fail under Title VII, the claims also fail under the Florida Civil

Rights Act, and Defendant Verizon's Motion for Summary Judgment as to Count III and Count V must be granted. Accordingly, it is

**ORDERED** that Defendant, Verizon Directories Motion to Strike Portions of the Affidavit of Plaintiff, Stephen H. Pashoian (Dkt. No. 16) be **GRANTED** in part and **DENIED** in part: Exhibit K of the Pashoian affidavit (Dkt. No. 16) be **STRICKEN** from the record; Defendant, Verizon Directories Motion for Summary Judgment (Dkt. No. 11) be **GRANTED** in part and **DENIED** in part; as to Plaintiff's interference claim in Count I, Defendant's Motion for Summary Judgment be **DENIED**; as to Plaintiff's retaliation claim in Count I and Counts II, III, IV, and V, Defendant's Motion for Summary Judgment be **GRANTED**.